**Marshall JACKSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 381S54.

Supreme Court of Indiana.

March 18, 1983.

Rehearing Denied May 13, 1983.

---

Dawn Elizabeth Wellman, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Marshall Jackson was tried in the Lake Superior Court for the murder of Charles Cardwell. Specifically, Appellant was tried on Count I, murder, and Count II, felony murder. The jury returned guilty verdicts on both counts. On January 29, 1980, the trial judge found that both counts arose from the same homicide and therefore imposed only one sentence. Appellant was sentenced to a term of sixty years for his felony murder conviction. Appellant now directly appeals and claims that there was insufficient evidence to convict him and that the trial court improperly admitted testimony concerning an unrelated crime for the purpose of showing his motive, intent and identity.

The evidence adduced at trial shows that very late in the night of May 1, 1979, Appellant and Leslie McGuire went to the Holiday Inn on Cline Avenue in Hammond, Indiana, with the intent to commit a robbery. Upon arriving at the motel, Appellant and McGuire conferred and decided that the lobby was too crowded. At that same time, Hammond Police Officer Richard Mack was working as an off-duty security officer at the Holiday Inn. He watched McGuire walk down a corridor at the motel as Appellant walked out of the motel building. Officer Mack was suspicious and followed Appellant outside. As Officer Mack stood outside, he observed an unidentified person step up to a Yellow Cab parked under the motel's entrance canopy and ask the cab driver if he was waiting for a fare. The cabbie replied in the negative and the unidentified person entered the cab. As the cab left, Officer Mack noted that Appellant followed behind the cab in an Oldsmobile automobile. In a statement given to police on May 13, 1979, Appellant admitted that McGuire was the person who entered

the cab and that he and McGuire planned to rob the cab driver. Appellant also admitted that he received half of the money obtained from the robbery. Approximately six hours after the episode at the Holiday Inn, the body of cab driver Charles Cardwell was found in his Yellow Cab in the parking lot of a Denny's Restaurant near the Holiday Inn. Cardwell had been shot in his left side between his 6th and 7th ribs. The bullet lacerated his aorta, kidney, and liver, causing his death.

■ Appellant now claims that the trial court should have granted his motion for a directed verdict at the close of the State's case. A motion for a directed verdict is more properly denominated a motion for judgment on the evidence. In order for the trial court to sustain such a motion, there must be a total absence of evidence or a finding that the evidence is without conflict and leads to only one inference which is in favor of the accused. *Sanders v. State,* (1981) Ind., 428 N.E.2d 23; *Norton v. State,* (1980) Ind., 408 N.E.2d 514. If the State presents sufficient evidence on each element of the crime thereby establishing a *prima facie* case, then the trial court commits no error by overruling a motion for judgment on the evidence. *Burkhalter v. State,* (1979) Ind., 397 N.E.2d 596; *Henson v. State,* (1977) 267 Ind. 424, 370 N.E.2d 898.

■ Officer Mack saw Appellant and one who later turned out to be McGuire leave the Holiday Inn area with cab driver Cardwell. Appellant admitted that he and McGuire intended to commit a robbery and that he followed the Yellow Cab intending to aid McGuire in robbing the cab driver. He admitted that he received half of the money obtained from the robbery. He claims, however, that McGuire shot and killed Cardwell. It is immaterial whether Appellant actually pulled the trigger in the Cardwell murder since he and McGuire together set out to commit the robbery, he accepted half of the money and drove the getaway vehicle. This Court has held:

"An accessory, aider and abettor may be charged in the same manner as a principal . . . An accessory is liable for acts of a principal although he did not personally participate in them."

*Coleman v. State,* (1976) 265 Ind. 357, 361, 354 N.E.2d 232, 235; *see also:* Ind.Code § 35–41–2–4 (Burns 1979). Appellant indicated by his own admissions that he participated as an "accessory" in the Cardwell murder. Accordingly, we find that there was sufficient evidence to find Appellant guilty of murder and felony murder.

■ The evidence adduced at trial also showed that on May 9th, just one week after Cardwell's murder, Appellant approached Gary McGinty at his place of business. McGinty worked at Mr. Neal's Auto Sales. Subsequent to some conversation, Appellant and McGinty took a test ride in a 1972 Cadillac automobile which Appellant indicated he was interested in purchasing. After driving the car around for a while, Appellant pulled into an alley located a few blocks from McGinty's car lot and pulled a gun on McGinty. Appellant demanded McGinty's money. McGinty turned over his wallet, checkbook and cash. After doing so, McGinty tried to get out of the car but Appellant told McGinty that he couldn't let him go as McGinty could identify him. Appellant then twice told McGinty to move his left arm so that he could get a better shot at him. Appellant thereupon shot McGinty in his left side at precisely the same spot on the body where Cardwell was shot. The two men struggled for the weapon causing it to discharge into the roof of the car. McGinty gained possession of the gun and tried to shoot Appellant only to find that the gun was empty. He threw the gun at Appellant as Appellant got out of the car. Appellant picked the gun up from the ground and left with it. This gun was subsequently recovered by Police Detective Ratajczak who was led to its location by McGuire. Extensive tests on the gun and the bullets retrieved from McGinty and Cardwell revealed that said bullets had been fired from the recovered gun. Firearms Officer Kenneth Roberts further noted that the bullets were unusual in that they were "wod cutters" which are primarily used for target shooting. Appellant sub-

sequently admitted to the police that he did shoot McGinty.

In general, evidence that the accused committed a crime separate and distinct from the one charged is irrelevant and therefore inadmissible to prove that the accused committed the instant crime. The evidence is admissible, however, if it tends to prove intent, motive, purpose, identification or common scheme or plan. *Downer v. State,* (1982) Ind., 429 N.E.2d 953. To be admissible, the State must prove that the crimes are substantially similar so that they support an inference that the same person committed both crimes. The two incidents must be so unusual and distinctive as to constitute the perpetrator's "signature." *Parker v. State,* (1981) Ind., 425 N.E.2d 628; *Williams v. State,* (1981) Ind., 417 N.E.2d 328.

McGinty positively identified Appellant as the perpetrator of the crimes against him. Moreover, Appellant admitted to the police that McGuire was supposed to follow behind the car he and McGinty were in to provide a "getaway" vehicle. Appellant also admitted that he and McGuire decided to work together to rob Cardwell. The State argues that the following factors were common to both crimes: Appellant was the person who shot McGinty and also was seen around Cardwell just prior to Cardwell being shot; the same gun was used to shoot McGinty as was used to shoot Cardwell; the bullets used in both instances were the same type of odd, flat-shaped bullets called "wod cutters"; and both victims were shot in the left-front side of the chest between the 6th and 7th ribs. Appellant twice told McGinty to move his left arm, appearing to purposely pick the left chest area to shoot McGinty. Of course, shooting Cardwell in precisely the same area one week earlier had proven fatal. We find that these crimes were sufficiently similar to constitute Appellant's criminal "signature." Accordingly, we hold that the trial court properly admitted into evidence proof of the McGinty shooting as this proof tended to establish the identity, motive, and common scheme and plan of the perpetrators involved in the Cardwell murder.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.