**Richard E. LANE, Petitioner–Appellant,**

v.

**Thomas D. RICHARDS and Linley E. Pearson, Respondents–Appellees.**

No. 91–1088.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1992.

Decided Feb. 25, 1992.

Michael B. Nash, Chicago, Ill. (argued), for petitioner-appellant.

Thomas D. Quigley, Office of Atty. Gen., Federal Litigation, Indianapolis, Ind. (argued), for respondents-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Somewhere in the Twilight Zone lingers the case of *Lane v. Indiana.* In October 1986 Lane began a collateral attack in state court on his conviction. (He is serving a life sentence for murder. See *Lane v. State*, 266 Ind. 485, 364 N.E.2d 756 (1977).) On November 18, 1986, the court appointed Darrolyn A. Ross, a deputy public defender, to represent Lane. Ross filed a motion for a continuance—apparently a perpetual continuance, for nothing has happened since.

Ross has sent Lane a series of lulling letters. In July 1987 Ross explained that "an ongoing emergency situation in another case" had occupied her time but that "I have not forgotten you and that I intend to respond to your letter after this emergency matter is resolved." In November 1987 Ross apologized for further delay, which she admitted was "far too long", and promised to visit Lane "as soon as possible". Lane then asked Susan Carpenter, the Public Defender of Indiana, to assign him another lawyer; in January 1988 Carpenter refused, saying that "Deputy Ross is an extremely good attorney and she needs time to read your record in order to prepare your case.... You are not being placed behind anyone except those who sought our assistance before you did, and we will get you to hearing as soon as we are able to do so." On July 1, 1988, Ross wrote to Lane that she has been "doing some preliminary work on your case" and was "planning to either have your case resolved or set for hearing by this Fall." Come the fall, Ross wrote Lane that "things have started resolving themselves and I plan to give your case the concentration it needs within the next couple of months."

The next couple of months passed, as did many more; while the months rolled on, so did the train of letters. Lane heard from Ross in August 1989 that "you are right at the top of my list". In January 1990 Ross wrote to Lane that she would "soon" approach the prosecutor in an attempt to negotiate a lower sentence. In September 1990 Ross wrote again, defining "soon": she would "meet with the Bartholomew County Prosecutor right after the election in November.... I assure you your name is on my calendar for November projects". This is the last communication from Ross. The state case is in stasis. In five years and two months, Ross has done nothing to assist Lane. (At oral argument, a Deputy Attorney General of Indiana told us that he thought Ross would "soon" approach the prosecutor to initiate negotiations.) And if we are to believe Carpenter's letter, *no one* whose case began after October 1986 has received aid from the Public Defender of Indiana.

Lane has pleaded with Ross, to no avail. He pleaded with Carpenter, to no avail. He complained to Indiana's Disciplinary Commission, which replied that the delay "does not raise a substantial question of misconduct which would warrant disciplinary action against Ms. Carpenter and Ms. Ross. Therefore, the complaint has been dismissed." And Lane has complained to the United States District Court, which dismissed his petition for a writ of habeas corpus on the ground that he has yet to exhaust state remedies.

■ This is a woeful performance by the State of Indiana—by a lawyer who has done nothing on her client's behalf for more than five years, by a judge who has allowed the case to grow a beard, by a prosecutor who at oral argument told us that all of this is really in Lane's best interest, by a disciplinary body that sees no evil when lawyers deceive their clients about the attention given to their claims. We appreciate the Public Defender's problem: too many clients, not enough lawyers. As the legislature sets the number of lawyers available, the number of cases per

lawyer is beyond the control of the office. But inadequate resources do not justify misleading prisoners about what lies in store. A lawyer who cannot provide zealous representation must withdraw, not lead the client to believe that relief is just around the corner.

None of this, however, opens the door to the relief Lane seeks: a writ of habeas corpus. Lane contends that, after he surrendered, the police did not honor his request to remain silent. In affirming his conviction, the Supreme Court of Indiana rejected Lane's argument that the interrogation violated *Miranda.* Now Lane wants a second opinion on that question. His petition adds that he received ineffective assistance at trial and that his sentence is unconstitutional because longer than that meted out to codefendants. Lane is entitled to a federal court's assessment only after exhausting his remedies in state court—and he has not exhausted these remedies, the district judge concluded, because the case he filed in 1986 remains on the state court's docket.

■ Lane blames Ross for the inaction and asks us to hold that the State of Indiana has closed its ears and doors to his contentions. Lane's obstacle is the principle that there is no constitutional right to counsel on collateral attack. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Errors committed by counsel representing a prisoner on collateral attack are not attributed to the state. *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991). Ross filed on Lane's behalf a motion for a continuance in state court. The state court's order in February 1987 granting a continuance provides that the case will be set for hearing on request. All Lane need do is fire Ross and request a hearing. We appointed a lawyer to represent Lane in this court; this lawyer could tell Lane these things. True, to get a hearing in Indiana Lane must surrender all hope of assistance by the public defender (if what he has received can be called "assistance"), but as the Constitution does not guarantee the aid of counsel to prosecute a

collateral attack, putting a prisoner to a choice between a lawyer and a prompt hearing does not violate the Constitution.

■ Cases such as *Dozie v. Cady,* 430 F.2d 637 (7th Cir.1970), and *Lowe v. Duckworth,* 663 F.2d 42 (7th Cir.1981), hold that a district court should determine whether lengthy delay in the state court is justifiable; if it is not, then the district judge should deem state remedies exhausted. See also *Harris v. Champion,* 938 F.2d 1062 (10th Cir.1991); *Hankins v. Fulcomer,* 941 F.2d 246 (3d Cir.1991). The reason for the delay is no mystery, so we do not need a hearing to explore that reason: the state case came to a halt because Ross asked for a continuance. If Ross spoke for Lane, then he is in no position to protest that the state is unwilling to decide his case. Under the common law a lawyer speaks for her client; *Coleman* and *Finley* reinforce the conclusion that Ross spoke for Lane; the request (and thus the delay) cannot be attributed to his adversary. Cf. *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Given Lane's ability to get the state case back under way, it would ill serve interests of comity among courts to remand this case for an inquiry into why the state judge granted the continuance and has not spontaneously revoked his order. Neither the state judge nor the state judicial system is on trial here.

Lane's argument to the contrary implies that by appointing a lawyer in order to make its remedial processes more effective, Indiana has made them less so, which allows him to bypass the state courts. Yet an option (Indiana's statutory entitlement to counsel) is not a millstone. It enlarges rather than contracts opportunities. By dismissing counsel, a prisoner in Indiana may put himself in the same position as the ordinary prisoner in other states that do not offer legal assistance. Counsel may deceive her client, as Ross appears to have done, and in this sense the appointment can injure the prisoner; but given *Coleman* this particular injury is not attributed to Indiana. A state's offer of a judicial proceeding, or of a proceeding with the assist-

ance of an albatross, is an offer of a judicial proceeding—one still open to Lane.

There remains a possibility that Lane has exhausted his state remedies because Indiana will decline to address his claims on the merits even after he requests a hearing. The Supreme Court of Indiana considered and rejected the *Miranda* contention in 1977 and is unlikely to revisit the subject. Other of Lane's arguments, such as the challenge to the sentence and his potential recharacterization of the *Miranda* argument as a contention that the confession was involuntary, were not presented on direct appeal, and relief would be barred by that procedural default. E.g., *Adams v. State*, 575 N.E.2d 625, 628 (Ind. 1991). A procedural bar to relief in state court means that there is no "available State corrective process" within the meaning of 28 U.S.C. § 2254 and thus establishes exhaustion. *Teague v. Lane*, 489 U.S. 288, 297–98, 109 S.Ct. 1060, 1067–68, 103 L.Ed.2d 334 (1989); *Mikel v. Thieret*, 887 F.2d 733, 736 (7th Cir.1989); *Barrera v. Young*, 794 F.2d 1264, 1268–69 (7th Cir. 1986). The district court wrote that it "will not bottom its decision in this case on procedural default, given the basic teaching of *Harris v. Reed*, 489 U.S. 255 [109 S.Ct. 1038, 103 L.Ed.2d 308] (1989)." By this the court apparently meant that because Lane had not presented his claims at all, the state court had not rejected them on procedural grounds, so they remain live. Such an approach misreads *Harris*. "A person who *never* presents a claim to state court cannot demand that the state court give a reason, rooted in state law, for not considering that claim. When a state would treat complete failure to present a claim as forfeiture, ... the federal court may enforce the state's bar on collateral review. *Harris*, 489 U.S. at 269–70, 109 S.Ct. at 1046–47 (O'Connor, J., concurring)." *Reese v. Peters*, 926 F.2d 668, 671 (7th Cir.1991) (emphasis in original).

 Lane's counsel in this court has concentrated on the confession. If that

were the only subject raised in the petition, all state remedies would be exhausted. It is not. Lane's challenge to the adequacy of his lawyer at trial is a novel issue—one not decided on direct appeal and open on collateral attack in Indiana. Because a petition containing any un-exhausted claim must be dismissed outright, *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the district judge properly remitted Lane to his state remedy.

If Lane were to eliminate the challenge to the adequacy of his lawyer, the federal court would retain the case. Perhaps, however, Lane will conclude that even his dim prospects of success in state court are brighter than those in federal court, given the doctrine of "abuse of the writ." See *McCleskey v. Zant*, ── U.S. ──, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). This is Lane's second petition seeking a writ of habeas corpus from the federal court. The first petition, filed in 1979, was denied. All of the claims Lane now presents were or should have been known in 1979. *McCleskey* does not leave Lane much room to maneuver. Be that as it may, the choice is his: state court with the petition in its current form, or federal court with the petition *sans* the attack on counsel.

AFFIRMED.

ESCHBACH, Senior Circuit Judge, dissenting.

While the majority locates this case somewhere in the "Twilight Zone," I believe Greek mythology is a more apt location. The character Tantalos was tortured for his sins by being forced to stand in water for all time. Whenever he tried to drink the water beneath him, the water receded beneath his chin; whenever he tried to eat fruit of the branch above him, the branch likewise eluded his grasp. Indiana has "tantalized" Lane. Whenever he has attempted to drink of his appointed counsel's aid, she has receded. Whenever he has reached for new appointed counsel, as Indiana has statutorily granted,[1] or com-

---

**1.** The majority emphasizes that Lane has no constitutional right to counsel in collateral proceedings, a principle I do not dispute. But we are not deciding a *constitutional* issue in this case. This case is about Lane's *statutory* entitlement to federal habeas review. We are decid-

plained to the state bar, the state's help has eluded him. Thus, Lane has been tantalized by the elusive prospect of free counsel for five years. Because I believe that the majority opinion perpetuates this torture, I respectfully dissent.

The majority opinion rests on an unjustified factual presumption that allows it to apply a rule of law which I consider inapplicable. First, the majority bases its decision not to grant a hearing on the factual presumption that the reason for the concededly inordinate delay is "no mystery." I apparently see more mystery than does the majority. At this stage, over five years since Lane began a collateral attack in Indiana on his conviction, I have no idea why this case has received a "perpetual continuance." As the majority points out, we do know what started that continuance—the public defender (Ross) asked for one. But for me, that starts rather than ends our mystery. Thus, I would reverse and remand to the district court for a hearing to determine the reasons for this delay. *See Lowe v. Duckworth*, 663 F.2d 42 (7th Cir.1981) (district court should determine whether lengthy delay in state court is justifiable; if it is not, then state remedies should be deemed exhausted); *Dozie v. Cady*, 430 F.2d 637 (7th Cir.1970) (same).

If the public defender is genuinely pursuing Lane's interests, but has delayed because she is pursuing other avenues of relief or because other clients are chronologically ahead of Lane, then perhaps the state process has not been ineffective within the meaning of section 2254(b).[2] If, however, the public defender has been shunting Lane's case out of indifference to his plight, then we cannot assume she is acting in Lane's interest, and the state process has, in my opinion, been ineffective.

The majority's unjustified factual presumption that the public defender has acted in Lane's interests allows it to apply a new rule of law—that rule being that a lawyer's delay cannot constitute ineffective state process under section 2254(b), even if that lawyer is a state-appointed and state-paid public defender who is not acting in her client's best interests. According to this rule, the reason is irrelevant because the public defender is the petitioner's agent and her errors cannot be attributed to the state. I believe that this approach is too formalistic because it *assumes* that because the state pays a public defender to act as its "devil's advocate" she always does so.[3] We need a hearing precisely to

ing whether Indiana's process is ineffective under § 2254(b). What is relevant to this inquiry is that Indiana has granted Lane a statutory right to counsel, which the majority ignores. Rule 1, Section 9(a) of the Indiana Rules of Procedure for Post Conviction Relief, which was in force during the pendency of this matter, stated:

> Upon receiving a copy of the petition, including an affidavit of indigency, from the clerk of the court, the Public Defender *shall* serve as counsel for petitioner, representing him in all proceedings under this Rule, including appeal, if necessary. (emphasis added).

Indiana cannot simultaneously preempt federal habeas review while refusing to review Lane's case. The majority would hold that the state's process is still effective under § 2254(b) even though the state has refused to discharge a duty it chose to undertake, because that duty is not required by the federal Constitution. This echoes the "bitter with the sweet" approach specifically rejected in the context of procedural due process, *see Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 539–41, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985), and which is particularly inappropriate to this statutory case.

2. Section 2254(b) states:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process *or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.*

28 U.S.C. § 2254(b) (emphasis added).

3. *See, e.g.,* Lisa McIntyre, The Public Defender: The Practice of Law in the Shadows of Repute (1987) (exploring the "paradox" of the public defender as a "state agent" charged with defending those who have committed crimes against the state and its citizens); *cf. Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (Court rejected formalistic approach of finding that a public defender acts "under color of" state law for purposes of § 1983 simply by virtue of being a state employee and looked instead to function or role of public defender at time of challenged action).

determine whether this assumption is true in this case. In addition, if this new rule drives the majority's opinion, then the majority has overruled this Court's decision in *Dozie v. Cady*, and should say so. In *Dozie*, petitioner's trial attorney was appointed to represent him in post-conviction proceedings[4] and procured a writ of error from the Wisconsin Supreme Court in January 1969. That attorney was relieved of his duties in July 1969 for reasons that the record left unclear. A second attorney was then appointed to represent the petitioner, but as of April 1970 had not filed a brief in the Wisconsin Supreme Court. The federal district court denied petitioner's pro se application for a writ of habeas corpus because of failure to exhaust state remedies. We reversed and remanded the case to the district court "for a determination of whether the delay in petitioner's case before the Wisconsin Supreme Court is justifiable." *Ibid.* We then instructed the district court that it should dismiss the case if it found the delay was justifiable, but that it should hear the petition on the merits if the delay was not justifiable. *Ibid.* There is no indication in *Dozie* that the delay was caused by anyone other than petitioner's appointed counsel, making *Dozie* and this case materially indistinguishable.

The majority analogizes this case to *Coleman v. Thompson*, — U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), citing it for the proposition that a lawyer's procedural default is not "attributable" to the state. *Coleman* is a "procedural default" case in which Coleman argued that his lawyer's failure to obey state procedural requirements constituted "cause" under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The Supreme Court held that the attorney's error was not "cause" and that the state had thus relied on an independent and adequate state ground in dismissing Coleman's appeal of his previously denied habeas petition. *Id.* 111 S.Ct. at 2568. Even if we accept the analogy of *Coleman* to the section 2254(b) case before us, *Coleman* is not dispositive. In reaching its conclusion, the

*Coleman* Court determined that the state's procedure was adequate prior to dismissing the petitioner's case. *Id.* at 2565. Here, we need a hearing to answer the analogous question—is Indiana's process effective under section 2254(b)? Unless the delay was justified, I would say no. Indiana law has dangled the prospect of free counsel in front of Lane's eyes by granting and appointing him a public defender. That defender, a state employee, has teased Lane with promises of help. The State of Indiana has refused to assign Lane another attorney, and the Indiana Bar has summarily refused to discipline his present public defender. Under these circumstances Lane may not have received "effective process." I believe he is entitled to a hearing to determine that much.

---

**4.** We note the gross misstatement in the State of Indiana's brief that *Dozie* is a direct criminal appeal rather than a post-conviction proceeding. Brief of Respondents–Appellees 10–11.