Marshall JACKSON, Petitioner,

v.

Jack DUCKWORTH, Respondent.

Civ. No. H 93–328.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 10, 1994.

§ 2254. Jackson's *habeas corpus* petition alleges that his state petition raises federal constitutional issues, though he does not develop those issues. Instead; Jackson asks the court for *habeas corpus* relief based on the sixty-eight months that his state petition has been pending. Jackson argues that this delay violates his rights to due process and equal protection under the federal constitution. *See* U.S. CONST. amend. XIV.

Jack Duckworth, by the State, has filed an "Answer to Petition and Motion to Dismiss." The State argues that Jackson's petition must be dismissed because: (1) Jackson has not exhausted his state-court remedies, and, (2) Jackson's complaint, that the state court has taken inordinately long to consider his post-conviction petition, is not itself cognizable under section 2254.

The court holds that the exhaustion requirement does not bar Jackson from seeking federal *habeas corpus* relief. It further holds that excessive delay in a state-court collateral proceeding may support a due process claim under section 2254. Accordingly, the State's motion to dismiss is **DENIED**. Jackson is given until February 24, 1994 to make a showing that the State's delay in processing his post-conviction petition has prejudiced him, as discussed in this opinion.

---

Marshall Jackson, pro se.

Thomas D. Quigley, Office of the Indiana Atty. Gen., Indianapolis, IN, for respondent.

### *ORDER*

MOODY, District Judge.

Marshall Jackson's *pro se* post-conviction petition lingers with however many other similar cases in the twilight zone of Indiana's court system. See *Lane v. Richards,* 957 F.2d 363, 364 (7th Cir.1992) ("Somewhere in the Twilight Zone lingers the case of *Lane v. Indiana.*"). Jackson has asked this court to use its *habeas corpus* powers to retrieve his petition from "the zone." *See* 28 U.S.C.

### I. *Background.*

Jackson was convicted of felony-murder in June of 1980 and is currently serving a sixty-year sentence in state prison. Jackson's conviction was affirmed by the Indiana Court of Appeals in 1981 and the Indiana Supreme Court in 1983. See *Jackson v. Indiana,* 426 N.E.2d 685 (Ind.Ct.App.1981) and *Jackson v. Indiana,* 446 N.E.2d 344 (Ind.1983). In June, 1988 Jackson exercised his right under IND.POST-CONV.R. 1 to collaterally attack his conviction. The State has answered Jackson's state-court post-conviction petition. The Indiana Public Defender is representing Jackson in the state-court proceeding, presumably pursuant to IND.POST-CONV.R. 1 § 9(a).[1] The court is circumspect in its use

---

1. IND POST-CONV.R. 1 § 9(a) provides, in part, that

Upon receiving a copy of the petition, including an affidavit of indigency, from the clerk of

of "representing" in this context because it appears the string of five assistant public defenders assigned to Jackson's case have done nothing to move it along over the past sixty-eight months (although the court is unsure of what else needs to be done as Jackson has filed his petition and the State has answered it). As the Seventh Circuit stated about similar circumstances in *Lane*, "[t]his is a woeful performance by the State of Indiana." 957 F.2d at 364.

## II. *Exhaustion of remedies.*

■ Jackson's section 2254 petition is ripe for consideration. Only through the looking-glass could the State prevail with its argument that Jackson cannot complain about the State's unwillingness to process his petition until the State has processed his petition. See *Allen v. Duckworth*, 6 F.3d 458, 459 (7th Cir.1993) (stating that such an argument "might ... threaten an infinite regress"); *Harris v. Champion*, 15 F.3d 1538, 1556, (10th Cir.1994) ("Although 2254 requires a *habeas* petitioner to exhaust his or her underlying claims before coming to federal court, it does not require a petitioner to exhaust the issue of exhaustion itself.").

■ As a matter of comity, exhaustion of state-provided process is generally prerequisite to *habeas corpus* relief. See *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950) ("[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."), *overruled on other grounds by Fay v. Noia*, 372 U.S. 391, 435–36, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963). Comity gives way, however, in "circumstances rendering [state-provided] process ineffective to protect the rights of the prisoner." *See* 28 U.S.C. § 2254(b). One such circumstance is where

the state process is characterized by unjustifiable and inordinate delay. *See Hankins v. Fulcomer*, 941 F.2d 246, 250 (3rd Cir.1991) ("[C]omity weighs less heavily because the state has had ample opportunity to pass upon the matter and has failed to sufficiently explain its ... delay.")

The seminal Seventh Circuit case on this issue is *Dozie v. Cady*, 430 F.2d 637 (7th Cir.1970). *Dozie* involved a seventeen-month delay during which the petitioner's case failed to be briefed before the Wisconsin Supreme Court, notwithstanding Dozie having been granted appointed counsel. *Id.* at 637. The Seventh Circuit remanded the case to the district court for determination of whether the delay was "justifiable." *Id.* at 638. The court founded its decision, in part, on the Supreme Court's statement that "[w]here state procedural snarls or obstacles preclude an effective state remedy ..., federal courts have no other choice but to grant relief in the collateral proceeding." *Id.* (quoting *Bartone v. United States*, 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963)). The court stated that "[i]f the district court finds the delay is not justifiable, it should proceed to a hearing on the merits of the petition for *habeas corpus*." *Id.*

*Lowe v. Duckworth*, 663 F.2d 42 (7th Cir. 1981) followed *Dozie*. The petitioner in *Lowe* sought the writ after his collateral post-conviction motion had lain dormant for nearly three and one-half years. *Id.* at 43. The court stated that "[t]he district court's dismissal of Lowe's petition was clearly erroneous" because "[w]here state court delay is inordinate, the district court must hold a hearing to determine whether the delay is justifiable." *Id.*[2]

*Dozie* and *Lowe* are thus clear that inordinate and unjustifiable delay in state appellate procedures excuses the requirement to exhaust those procedures before receiving fed-

---

the court, the Public Defender may represent any petitioner committed to the Indiana Department of Correction in all proceedings under this rule, including appeal, if the Public Defender determines the proceedings are meritorious and in the interest of justice. The Public Defender may refuse representation in any case where the conviction or sentence be-

ing challenged has no present penal consequences.

2. The court did not order a remand in *Lowe*, however, because the state court had granted Lowe's request for a new trial prior to its decision. 663 F.2d at 43.

eral *habeas corpus* review. The court recently re-affirmed the *Dozie–Lowe* position, *see Lane*, 957 F.2d at 365, and other circuits addressing the question agree.[3] *See Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir.1989); *Hankins*, 941 F.2d at 250, 250 n. 6 (3rd Cir.); *St. Jules v. Beto*, 462 F.2d 1365, 1366–67 (5th Cir.1972); *Seemiller v. Wyrick*, 663 F.2d 805, 807–08 (8th Cir.1981); *United States v. Tucker*, 8 F.3d 673, 676 (9th Cir.1993); *Harris*, 15 F.3d at 1555 (10th Cir).

■ In all of these cases, whether exhaustion was required turned on whether: (1) the delay was inordinate, and, (2) the delay was justifiable. The first of those questions is easily answered here: if the seventeen-month delay in *Dozie* was inordinate, then the sixty-eight months that Jackson has waited surely is, too.[4] The critical question here, therefore, is whether the delay is justifiable. The burden for establishing this fact falls to the State. *See Brooks*, 875 F.2d at 31 (excusing exhaustion based on length of delay plus "the state's lack of a legitimate reason for [the delay]"); *Burkett v. Cunningham*, 826 F.2d 1208, 1218 (3d Cir.1987) (where petitioner demonstrates inordinate delay, respondents must demonstrate why further resort to state courts should be required).

In its "Answer to Petition and Motion to Dismiss," the State has not offered any evidentiary material or explanation with regard to the delay. Neither does the court, as did the *Lane* majority, find evidence to support a finding that the delay is attributable to Jackson. *See Lane*, 957 F.2d at 365 (majority found delays resulted from continuances requested by Lane's attorney and attributable to Lane); *but see, e.g., id.* at 367 (Eschbach, dissenting) ("If ... the public defender has

been shunting Lane's case out of indifference to his plight ... we cannot assume she is acting in Lane's interest."); *Harris*, 15 F.3d at 1547-48 (case premised on delays resulting from over-worked state public defender); *Brooks*, 875 F.2d at 31 (delay occasioned by Brook's appointed-counsel's delay). There is no suggestion here that the series of public defenders assigned to Jackson's case have requested continuances. Jackson has provided the court a copy of a docket sheet from state court that reflects the filing of the petition by Jackson and the answer by the State in June, 1988. In its answer to Jackson's petition, the State fails to even suggest a justification for the failure, over the past sixty-eight months, of the state court to resolve this joined dispute. The State has not pointed to any evidence that might support a hearing with regard to the reason for the delay here. Accordingly, the court excuses Jackson from further "exhausting" the state post-conviction process and turns to the substance of Jackson's section 2254 petition.

### III. *Jackson's due process claim.*

■ Jackson founds his section 2254 petition on the due process clause of the Fourteenth Amendment to the United States Constitution.[5] The petition does not ask the court to address the merits of the federal claims in his state-court petition; instead, Jackson argues that the State's failure to resolve his post-conviction petition, in itself, constitutes a deprivation of due process and requires his release. The court finds that the delay here failed to comport with the fundamental fairness required by the due

---

3. Notwithstanding *Dozie* and *Lowe, Allen*, 6 F.3d at 459, stated that the Seventh Circuit had "taken no position" on whether inordinate delay in state procedures could excuse the exhaustion requirement. *Allen* does not overrule *Dozie* and *Allen*. In fact, it cites to neither of these earlier cases.

4. Although no bright-line rule has, or perhaps should, be established for what constitutes inordinate delay, consider *Harris*, 15 F.3d at 1555-56, 1994 U.S.App. LEXIS at *36–*41, which holds that a 2–year delay is presumptively inordinate

and which sets out the various delays found inordinate by other circuits.

5. The Fourteenth Amendment provides, in part:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Jackson also argues that the delay in this case violated the equal protection clause of the Fourteenth Amendment. Because the court finds that Jackson's due process rights are implicated, it does not reach the equal protection issue.

process clause. Release at this point, however, would be premature.

Section 2254 provides that

a district court shall entertain an application for a writ of *habeas corpus* in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.*

28 U.S.C. § 2254(a) (Emphasis added.) The State points out that Jackson's petition is founded not on the premise that he is being held in violation of federal law, but rather on the delay in the state procedure designed, in part, to make that determination.

■ A finding that the State is taking unreasonably long to process Jackson's post-conviction petition would leave open the question of whether Jackson's substantive claims have any merit: that is, whether he is lawfully in custody. That said, the State's dawdling with regard to Jackson's petition does raise substantial due process concerns. Other circuits have held that excessive post-conviction delays may indeed rise to the level of due process violations themselves cognizable under section 2254. *See Harris,* 15 F.3d at 1557-58 (10th Cir.) (citing cases from 1st, 2d, 3d, 5th, and 9th circuits). The Seventh Circuit recently recognized this trend of finding that "excessive delay in the processing of a criminal defendant's state appeal can be a denial of due process of law." *Allen,* 6 F.3d at 459. The basis for these cases, which concern direct appeals, is sound: although a defendant has no right to a post-conviction review of his or her case at the state level, "a state is not permitted with one hand to grant such a right and with the other to take it away in an arbitrary fashion, as by . . . simply refusing to decide an appeal." *Id.* at 459-60; *see also Harris,* 15 F.3d at 1558-59. This reasoning applies to collateral appeals as well.

■ The State disagrees, arguing that an error in collateral proceedings can never rise to a due process violation cognizable under section 2254. It is true that defendants collaterally attacking a conviction "are in a fun-

damentally different position" than those on trial or making a first appeal as of right. *Pennsylvania v. Finley,* 481 U.S. 551, 559, 107 S.Ct. 1990, 1995, 95 L.Ed.2d 539 (1987). Consequently, states need not provide the full panoply of procedural safeguards in collateral proceedings as are required at trial or first appeal by right. *See id.* This explains the case-law relied upon by the State here. *See, e.g., U.S. ex rel. Curtis v. Illinois,* 521 F.2d 717, 721 (7th Cir.1975) (claimed ineffective assistance of post-conviction counsel); *Hopkinson v. Shillinger,* 866 F.2d 1185, 1218-19 (10th Cir.1989) (procedures available to post-conviction claimants inadequate); *Kirby v. Dutton,* 794 F.2d 245, 245-47 (6th Cir.1986) (claimed ineffective assistance of post-conviction counsel). It also explains the Seventh Circuit's statement in *Lane* that "Lane's obstacle [to relief from his post-conviction counsel's performance] is the principle that there is no constitutional right to counsel on collateral attack." *Lane,* 957 F.2d at 365.

■■ The consequence of the unique position of collateral challengers is not, however, that they can never make out due process claims under section 2254: no court has, and no court could reasonably have, concluded that defendants in collateral state-court proceedings are accorded no due process. Having chosen to provide collateral post-conviction procedures for convicted prisoners, those procedures must, at least, comport with the base-line of due process—*i.e.,* they must comport with "fundamental fairness." *See Finley,* 481 U.S. at 556, 107 S.Ct. at 1994. As far as due process is concerned, therefore, the difference between, for example, delays in direct appeals as of right and delays in state-court collateral proceedings is quantitative, not existential.

The court has located only one case in which denial of *habeas corpus* relief was based on the argument that delay in collateral post-conviction proceedings was not cognizable under section 2254 as a due process violation. *See Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.1989). The Ninth Circuit offered no analysis to support its conclusion in *Franzen.* Furthermore, the one-year delay involved there was arguably not suffi-

ciently excessive to warrant either exhaustion or a finding that fundamental fairness did not obtain. *See id.*

The five and one-half year delay *vis-a-vis* Jackson's petition is another matter. The court hereby finds that the delay is excessive and beyond the pale of fundamental fairness. Frankly, the delay is ridiculous.

Nonetheless, the fact of an excessive delay does not, as Jackson argues, *ipso facto* justify the release of a prisoner who has been convicted of felony-murder and has been heard already on two levels of direct appeal. Courts finding a *prima facie* due process claim under section 2254 have subjected the delay to the balancing test applied to trial delays announced in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See, e.g., Harris,* 15 F.3d at 1558–59; *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990); *see also Everroad v. State,* 570 N.E.2d 38, 55–56 (Ind.Ct.App.1991) (Indiana Court of Appeals recognizing that inordinate delay in appeal process may result in due process violation and applying *Barker* ), *affirmed in part, vacated in part on other grounds by Everroad v. State,* 590 N.E.2d 567 (Ind.1992). Jackson has failed to demonstrate that he is entitled to relief under *Barker.*

 *Barker* requires that courts facing speedy-trial challenges consider and balance: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's active assertion of the right, and (4) the prejudice the delay has engendered the defendant. 407 U.S. at 532, 92 S.Ct. at 2193. With modification to the prejudice requirement, this is the appropriate test by which to determine the availability of *habeas corpus* relief to state-court post-conviction petitioners complaining of excessive delay.[6]

The prejudice element must be modified "to reflect the interest protected by an appeal [in this case collateral] 'unencumbered by excessive delay.'" *Harris,* 15 F.3d at

1559. As noted, to the extent that Jackson's case differs from *Harris,* which involved direct appeals, that difference is reflected in the weight, not the nature, of the burden Jackson bears to make out prejudice. Accordingly, the court adopts, *Harris*'s formulation of prejudice. *Id.* at 1563–65; see also *Tucker,* 8 F.3d at 676. This formulation takes into account whether the delay caused prejudice by resulting in:

- oppressive incarceration;

- constitutionally cognizable anxiety; or,

- impairment of grounds for appeal or defenses in the event of a retrial.

*Harris,* 15 F.3d at 1563. The court will not here repeat the thorough discussion of these types of prejudice set out by *Harris.* The court does note that crucial to making out any of these forms of prejudice is proof of a colorable state or federal claim that would warrant reversal of Jackson's conviction at the post-conviction stage. No full-blown trial of these claims is appropriate, but Jackson must make a particularized showing that he has set valid issues before the state court. It would, after all, be absurd to release a properly convicted prisoner because of a delay in hearing a frivolous claim.

If Jackson can make this showing, the court will consider issuance of a "conditional writ," whereby the State is ordered to decide the prisoner's appeal within a time certain or else release the prisoner. See *Id.* at 1566–67; *Coe v. Thurman,* 922 F.2d 528, 532–33 (9th Cir.1990); *Brooks,* 875 F.2d at 32.

## IV. *Conclusion.*

Jackson's petition will not be dismissed at this stage. Jackson is hereby given until February 24, 1994 to brief the issue of prejudice. The State has until March 10, 1994 to answer Jackson's brief. Of course, the best

---

**6.** With regard to the "reason for delay" prong of this test, the court points out that delays occasioned by overcrowded dockets and underfunded public defenders are attributable to the State, not Jackson. *See, e.g., Harris,* 15 F.3d at 1562 n. 13 (lack of funding and possible mismanagement of

resources by Public Defender not acceptable excuse for delay); *Burkett,* 951 F.2d at 1439–40 (The "ultimate responsibility for delay caused by overcrowded courts rests with the government") (citing *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192).

remedy would be for the Indiana courts to render this order moot by providing Jackson, if late, with the collateral hearing the state legislature has promised him.

SO ORDERED.