Carrie **DOUGLAS,** Appellant–
Petitioner,

v.

**STATE of Indiana,** Appellee–
Respondent.

No. 49A02–0211–PC–956.

Court of Appeals of Indiana.

Dec. 18, 2003.

Rehearing Denied March 19, 2004.

Carrie Douglas, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Carrie Douglas appeals the denial of his petition for post-conviction relief. We consolidate and restate his twelve issues as whether the court erred when it denied his petition for post-conviction relief. We affirm.

## FACTS AND PROCEDURAL HISTORY

On direct appeal, we summarized the facts underlying Douglas' conviction:

> The evidence reveals that Douglas persuaded the victim to drive with him on an errand. He eventually drove her to a park and smoked marijuana and drank wine coolers with her. Douglas then asked the victim to have sexual intercourse with him, which she refused. In response, Douglas locked the car door, retrieved a knife from the glove compartment, and held it to her throat as he threatened to kill her. He then forced the victim to disrobe and engage in sexual intercourse with him in the car.

*Douglas v. State*, No. 49A02–8906–CR–300, mem. op. at 2, 567 N.E.2d 1206 (Ind.Ct. App., Mar. 5, 1991), *trans. denied.* A jury convicted Douglas of rape as a Class A felony [1] and confinement as a Class B felony [2] and found him to be an habitual offender.[3] The trial court sentenced Douglas to forty years for rape, twenty years for confinement, and thirty years for being an habitual offender, with the sentences to be served consecutively.

On direct appeal, Douglas questioned the sufficiency of the evidence, the trial court's denial of his motion for a new trial based on newly discovered evidence, the trial court's admission of evidence, and the effectiveness of assistance from trial counsel. We held that all of Douglas' claims failed. *See id.*

On September 15, 1992, Douglas filed a pro se petition for post-conviction relief. The public defender's office filed an ap-

---

**1.** Ind.Code § 35–42–4–1.

**2.** Ind.Code § 35–42–3–3.

**3.** Ind.Code § 35–50–2–8.

pearance on Douglas' behalf. On July 12, 1995, Douglas filed a motion to stay the proceedings. On August 5, 1998, the trial court granted the public defender's motion to withdraw. On February 26, 2002, Douglas filed an amended petition for post-conviction relief. On June 27, 2002, the court held a hearing on his petition. Douglas presented evidence at the hearing, but he did not submit the record of proceedings from his direct appeal. The court denied his petition.

## DISCUSSION AND DECISION

■ Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind.2002), *reh'g denied.* Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind.2002), *reh'g denied, cert. denied* 537 U.S. 1122, 123 S.Ct. 857, 154 L.Ed.2d 803 (2003); *see also* Ind. Post–Conviction Rule 1(1)(a). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. P–C.R. 1(5).

■ When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment. *Curry v. State*, 674 N.E.2d 160, 161 (Ind.1996). Consequently, we may not reverse the post-conviction court's judgment unless the petitioner demonstrates that the evidence "as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.* We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not have to give deference to the post-conviction court's conclusions of law.

*Davidson*, 763 N.E.2d at 443–44. On appeal, we may not reweigh the evidence or reassess the credibility of the witnesses. *Id.* at 444.

### 1. Issues PCR Court Found Waived

Issues seven, eight, and nine in Douglas' brief are: 7) whether Douglas' trial judge was biased; 8) whether the sentencing judge followed the correct procedure; and 9) whether jury instruction seventeen prejudiced Douglas. The post-conviction court found those three issues waived because they were available on direct appeal.

■ As the entire argument regarding these issues in his brief, Douglas provides the following statement:

> Appellant, [sic] contends that if the Court finds that the three issues above is [sic] not in fact waived, then he reserve [sic] the right to present argument in their support. If the Court find [sic] that they are waived, then the waiver must be contributed [sic] to ineffective assistance of appellate counsel.

(Br. of Appellant at 34) (emphasis in original).

Contrary to Douglas' assertion, appellants are not permitted to "reserve the right to present argument" at a later point; rather, they are obliged to present all their arguments in their initial briefs to this court. *See* Ind. Appellate R. 46(A)(8) ("This [argument] section shall contain the appellant's contentions why the trial court ... committed reversible error."); Ind. App. R. 46(C) ("No new issues shall be raised in the reply brief."). Because he did not present arguments, the issues are waived for appellate review.

Moreover, we agree with the post-conviction court's decision that these issues were available at the time of Douglas' direct appeal and, therefore, were waived for post-conviction review. *See Benefiel v.*

*State,* 716 N.E.2d 906, 911 (Ind.1999) (waiving as free-standing claims any issues available on direct appeal), *reh'g denied, cert. denied* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000).

Finally, to the extent Douglas invites us to consider these issues as examples of ineffective assistance of appellate counsel, we cannot. Because Douglas did not provide arguments regarding these issues, we are unable to evaluate whether Douglas' counsel committed error or whether Douglas was prejudiced thereby. *See id.* at 911, n. 2 (holding a single sentence declaring counsel was ineffective for raising issues on direct appeal is insufficient to avoid waiver of the issue; rather, to avoid waiver, appellant must provide argument regarding why his counsel was ineffective). Accordingly, Douglas waived his claim of ineffective assistance of counsel as to these issues.

### 2. Issues PCR Court Found Res Judicata

■ Douglas also raised: 10) whether the trial court sentenced Douglas in violation of double jeopardy principles; 11) whether the trial court erred by refusing to accept Douglas' "motion to prohibit the State to file their motion in limine," (Appellant's Br. at 34); and 12) whether Douglas was denied effective assistance of trial counsel. The post-conviction court found these three issues were *res judicata.* On appeal, Douglas agrees the ineffective assistance of trial counsel issue is *res judicata,* but then says:

however, issues [ten] and [eleven], if the Court find [sic] that they are not res-judicate [sic], then [sic] reserve the right to argue the other issues, if this Court find [sic] that they are, these issues must also be constributed [sic] to appellate counsel for improper [sic] raising them in the original brief.

(*Id.* at 34.)

■ As with the previous three issues, Douglas' failure to include any argument in his appellate brief regarding these issues has resulted in waiver of those issues for appellate review. Moreover, our review of this court's opinion from Douglas' direct appeal informed us that we did, in fact, address these issues on direct appeal. Because each of these issues failed on its merits on direct appeal, these issues could not have provided a basis for a claim of ineffective assistance of appellate counsel, even if Douglas had properly argued it.

### 3. Biased Jury

■ Douglas' fifth issue is whether the jury that tried him was biased because it was not from a cross-section of the community. This issue was available on direct appeal and is therefore waived for post-conviction proceedings. *See Benefiel,* 716 N.E.2d at 911.

■ Moreover, the post-conviction court concluded "[Douglas] has not shown that his jury panel was white, let alone that he preserved any error in the selection of his jury." (Appellant's App. at 75.) Because Douglas failed to provide the post-conviction court with a record of the proceedings from his trial,[4] we cannot say

4. Douglas requests that we "[p]lease review the Appellate Record that is on filed [sic] with the Clerk of this Court." (Appellant's Br. at 25, n. 1.) However, a post-conviction court may not take judicial notice of the transcript of the evidence from the original proceedings unless exceptional circumstances exist. *State v. Hicks,* 525 N.E.2d 316, 317 (Ind.1988).

The transcript must be admitted into evidence just like any other exhibit. *Id.* Because the record was not submitted to the post-conviction court, it was not part of the evidence the post-conviction court considered when denying Douglas' petition, and it is not in the record before us on this appeal. Accordingly,

the post-conviction court's conclusion that Douglas failed to support this claim was contrary to law.

### 4. Pre–Trial Suppression of Evidence

The first issue Douglas raised is whether the State withheld exculpatory evidence from him prior to his original trial. Specifically, Douglas claims the State improperly withheld information about the victim's criminal history, the victim's juvenile record, serological and other medical reports, and witness statements.

■■■■ To establish this claim, Douglas had to demonstrate: 1) the prosecutor suppressed evidence; 2) the evidence was favorable to the defense; and 3) the suppressed evidence was material. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 268 (Ind. 2000), *reh'g denied, cert. denied* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002). We may reverse a defendant's conviction for suppression of evidence by the prosecutor only if the undisclosed evidence leads us to believe the result of the trial would have been different if the evidence had been disclosed. *Id.* The post-conviction court found that Douglas failed to prove this claim. Our review of the record indicates the post-conviction court did not err.

■■■ The evidence indicates Douglas' counsel knew before trial about the victim's criminal history and juvenile detention record. The evidence Douglas presented to the post-conviction court did not demonstrate that the State and victim had an agreement regarding her testimony;

therefore there is no evidence the State improperly withheld such information from Douglas.

■■■ The evidence indicates Douglas' counsel knew about the serological reports before trial. Douglas complains he did not receive other medical records and claims those records prove nothing happened to the victim on the night of the rape. However, in light of the fact Douglas admitted to police he had sex with the victim on the night of the rape, the medical records could not be exculpatory.

■■■ Douglas presented no evidence to the post-conviction court proving Vicky Minor gave a statement favorable to him to the police. Therefore, the post-conviction court could not have erred when it found such a statement was not improperly withheld from Douglas prior to his trial. While Douglas did submit two other statements, by Mays and Goodlow, those statements are unfavorable to Douglas, as each witness recounts what they heard about Douglas raping the victim. Accordingly, they were not favorable to the defense.

■■■ Moreover, as Douglas did not provide the direct appeal record, the post-conviction court could not determine whether the result of the proceeding would have been different if Douglas had been provided this information before trial. Consequently, the post-conviction court's denial of relief on this issue was not contrary to law.[5] *See id.* at 269.

we need not request the direct appeal record from the Clerk's office.

**5.** Based on the prosecution's alleged failure to give Douglas this same evidence before his trial and before the post-conviction hearing, Douglas claims as his fourth issue the prosecutor committed misconduct. Douglas' pros-

ecutorial misconduct argument fails for the same reasons the improper suppression argument failed: Douglas did not prove the evidence was improperly withheld or that he was prejudiced thereby. Accordingly, the post-conviction court's decision was not contrary to law.

### 5. *Failure to Preserve Rape Kit*

Douglas' second issue is whether the State violated his right to due process when it failed to preserve the rape kit that was collected from the victim soon after the crime. Douglas argues the failure to preserve this evidence violated his right to due process because DNA tests would have allowed him to prove someone else raped the victim. We disagree.

 As we noted in our opinion affirming Douglas' conviction, Douglas admitted to police that he had intercourse with the victim on the night in question. *Douglas,* slip op. at 11, 15. Even if DNA testing had revealed someone else left genetic material on the victim, such a report would not prove Douglas had not raped the victim. *See id.* at 15. Rather, it would demonstrate only someone else also had intercourse with the victim within the seventy-two hours before she went to the hospital to report Douglas raped her. *See id.* at 11 (noting fluids inconsistent with Douglas' could have been placed in victim's vagina up to seventy-two hours earlier). The post-conviction court's denial of Douglas' petition based on this issue is not contrary to law.

### 6. *Ineffective Assistance of Appellate Counsel*

The third issue Douglas raised in his brief is whether he received ineffective assistance from his direct appeal counsel. We review ineffective assistance of appellate counsel claims under the two-prong test in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wentz v. State,* 766 N.E.2d 351, 360 (Ind. 2002), *reh'g denied.* First, the petitioner must demonstrate counsel's performance was deficient because it fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. *Smith v. State,* 765 N.E.2d 578, 585 (Ind.2002), *reh'g denied.* Second, the petitioner must demonstrate he was prejudiced by his counsel's deficient performance. *Wentz,* 766 N.E.2d at 360. To demonstrate prejudice, a petitioner must demonstrate a reasonable probability the result of his trial would have been different if his counsel had not made the errors. *Id.* A probability is reasonable if our confidence in the outcome has been undermined. *Id.*

 We presume counsel provided adequate assistance, and we give deference to counsel's choice of strategy and tactics. *Smith,* 765 N.E.2d at 585. "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.* If we may easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient. *Wentz,* 766 N.E.2d at 360.

 Douglas claims appellate counsel was ineffective because he waived sufficiency of the evidence and double jeopardy arguments. However, on direct appeal, waiver notwithstanding, we addressed the sufficiency of evidence to support the confinement conviction and the double jeopardy arguments, and they failed on their merits. *See Douglas,* slip op. at 4. Consequently, Douglas was not prejudiced by counsel's waiver of these issues.

 Regarding Douglas' allegation that counsel was ineffective for failing to demonstrate prejudice when Douglas was improperly arraigned on the habitual offender charge, we found on direct appeal the facts surrounding Douglas' habitual offender charge indicated he knew of the charge in time to defend against it. *Id.* at 9. Accordingly, this argument failed on

direct appeal not because of counsel's ineffectiveness, but because it had no merit.

Next, Douglas alleges appellate counsel was ineffective for failing to adequately argue in the direct appeal brief why newly discovered evidence justified a new trial. We found Douglas had waived on direct appeal his argument that an affidavit by Joseph G. Wiley constituted newly discovered evidence justifying a new trial. However, Douglas has failed to demonstrate in his current brief that the affidavit constitutes newly discovered evidence justifying a new trial. As he has failed to do so, he cannot prove he was prejudiced by his appellate counsel's waiver of the issue.

Douglas claims counsel was ineffective for failing to prove that admission of the transcript of a statement by Thomas Larry Austin was erroneous. Douglas believes such error could have been proven if appellate counsel had merely submitted additional documents and medical reports. However, on direct appeal, we held: "Even assuming the statement [was] improperly admitted, reversal is not required.... Douglas was not harmed by its admission." *Id.* at 13. Douglas cannot demonstrate he was prejudiced by counsel's alleged error.

Finally, Douglas claims his appellate counsel was ineffective for failing to adequately prove ineffective assistance of trial counsel. However, Douglas did not submit his direct appeal record of proceedings to the post-conviction court. Accordingly, neither we nor the post-conviction court can determine that Douglas was prejudiced by trial counsel's actions. Consequently, we cannot say the post-conviction court's denial of Douglas' petition was contrary to law. *See Tapia v. State,* 753 N.E.2d 581, 587–88 (Ind.2001) (holding petitioner's failure to present any witnesses or submit the trial record into evidence at hearing led to conclusion that petitioner

did not meet his burden of proof for post-conviction relief).

## 7. *Delay in Hearing Post–Conviction Petition*

Finally, the sixth issue in Douglas' brief is whether he was denied due process by the trial court and the public defender's office. Douglas claims the hearing on his petition for post-conviction relief was inordinately delayed. We disagree that he was denied due process.

The record before us indicates the following procedural history. On September 15, 1992, Douglas filed a *pro se* petition for post-conviction relief. The public defender's office filed an appearance on Douglas' behalf. On July 12, 1995, Douglas filed a motion to stay the proceedings indefinitely. On August 5, 1998, the trial court granted the public defender's motion to withdraw. On February 26, 2002, Douglas filed an amended petition for post-conviction relief. On June 27, 2002, the court held a hearing on his petition. The court denied his petition on October 16, 2002.

To support his claim that he was denied due process, Douglas cites *Lane v. Richards,* 957 F.2d 363 (7th Cir.1992), *cert. denied* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). In *Lane,* a post-conviction petitioner found himself in circumstances remarkably similar to Douglas'. In October of 1986, Lane filed his petition for post-conviction relief. That same year, a public defender was appointed to represent him. The public defender filed a motion for a continuance and then failed to take any further action on Lane's petition for over five years, despite Lane's many requests. Lane filed a habeas corpus petition in federal court, and in affirming the denial of his petition, Judge Easterbrook wrote:

Lane blames [his counsel] for the inaction and asks us to hold that the State of

Indiana has closed its ears and doors to his contentions. Lane's obstacle is the principle that there is no constitutional right to counsel on collateral attack. Errors committed by counsel representing a prisoner on collateral attack are not attributed to the state. [Counsel] filed on Lane's behalf a motion for continuance in state court. The state court's order ... granting the continuance provides that the case will be set for hearing on request. All Lane had to do is fire [counsel] and request a hearing.... True, to get a hearing in Indiana Lane must surrender all hope of assistance by the public defender (if what he has received can be called "assistance"), but as the Constitution does not guarantee the aid of counsel to prosecute a collateral attack, putting a prisoner to a choice between a lawyer and a prompt hearing does not violate the Constitution.

... [T]he state case came to a halt because [counsel] asked for a continuance. If [counsel] spoke for Lane then he is in no position to protest that the state is unwilling to decide his case. Under the common law a lawyer speaks for her client; ... the request (and thus the delay) cannot be attributed to his adversary.... Counsel may deceive her client, as [counsel] appears to have done, and in this sense the appointment can injure the prisoner; but given [precedent] this particular injury is not attributed to Indiana.

*Lane*, 957 F.2d at 365.

█ Given the procedural history of Douglas' case and the precedent in *Lane*, we cannot say Douglas was denied due process. While represented by counsel, Douglas filed a motion to stay the proceedings. Douglas points to evidence that he tried to get the court to act on his petition between 1995 and 1998; however, a trial court need not act on *pro se* motions by a party that is represented by counsel. *See, e.g., id.* ("[u]nder the common law a lawyer speaks for her client"). Even if Douglas was not notified of his counsel's 1998 withdrawal until 2000, he did not file an amended petition or attempt to move his cause forward until 2002. Once he filed his amended petition and requested a hearing date, his hearing occurred in less than six months. The trial court did not deny Douglas his right to due process. Moreover, regarding the public defender's failure to act, if Douglas was unhappy with the representation he was receiving from the public defender's office, he should have moved to proceed *pro se. See id.*

### CONCLUSION

Because all of Douglas' arguments fail, the court's denial of his petition for post-conviction relief was not contrary to law. Accordingly, we affirm.

Affirmed.

KIRSCH and MATHIAS, JJ., concur.