In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3911

ROBERT GACHO,

*Petitioner-Appellant*,

*v.*

KIM BUTLER, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 4334 — **Robert W. Gettleman**, *Judge*.

ARGUED JUNE 2, 2015 — DECIDED JULY 2, 2015

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Robert Gacho is one of many Illinois prisoners who had the misfortune to appear before the late Judge Thomas Maloney, a corrupt judge who served on the Cook County Circuit Court from 1977 until his indictment for bribery in 1991 in connection with the Operation Greylord investigation. Gacho was convicted of murder in Judge Maloney's court in 1984 and has been trying to mount state and federal collateral attacks on his conviction since

1991. His most recent federal habeas petition alleges that his conviction was tainted by the judge's corruption and also that his trial attorney was operating under an impermissible conflict of interest and was otherwise ineffective.

Gacho's long quest for state postconviction relief is not yet resolved, however, so he asked the federal court to excuse the normal requirement that he exhaust his state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(B)(ii). The district judge denied this request and dismissed Gacho's § 2254 petition for lack of exhaustion. Gacho appealed.

We dismiss the appeal for lack of jurisdiction. The district court dismissed the § 2254 petition without prejudice and with leave to refile when the state postconviction proceedings are finished. That's a nonfinal, nonappealable order. Gacho remains free to refile his petition in the district court once he has exhausted his state remedies.

## I. Background

After midnight on December 12, 1982, Aldo Fratto and Tullio Infelise paid a visit to Gacho's home hoping to sell him three-quarters of a kilo of cocaine. The next morning Fratto and Infelise were found in the trunk of a car, tied up and shot repeatedly. Fratto was already dead; Infelise was at death's door. Before he died, however, Infelise identified the assailants as "Robert Gotch, Dino and Joe." Gacho was immediately arrested, along with Dino Titone and Joseph Sorrentino, and he confessed his involvement in the murders that same day, proofreading and signing a written statement.

The three men were charged with murder, aggravated kidnapping, and armed robbery. Gacho and Titone stood

trial in Judge Maloney's court; Titone's case was tried to the bench and Gacho's to a jury. (Sorrentino was tried separately.) Gacho's girlfriend Katherine De Wulf was the star witness for the prosecution. She had witnessed the key events of December 12, and her testimony largely aligned with Gacho's confession, which was also admitted at trial. The jury found Gacho guilty and he was sentenced to death.

As the world now knows, Judge Maloney was corrupt; he has "the dubious distinction of being the only Illinois judge ever convicted of fixing a murder case." *Bracy v. Gramley*, 520 U.S. 899, 901 (1997). In 1991 he was indicted by a federal grand jury on multiple bribery charges stemming from the Operation Greylord investigation. He was convicted in 1993 and sentenced to a term in federal prison. Gacho claims that Maloney solicited a bribe from him but his family could not raise the money to pay the judge's price. Titone's family, on the other hand, paid Maloney $10,000 to fix his case, but he was convicted anyway.

Gacho now argues that a judge as corrupt as Maloney would surely have needed to compensate for his bribe-induced acquittals by throwing the book at defendants—like him—who either didn't or couldn't pay up. The Supreme Court has recognized this theory of corruption, known as "compensatory bias." *See id.* at 905.

A crooked judge wasn't Gacho's only problem. He also claims that his trial lawyer was unscrupulous. Gacho hired Robert McDonnell, a Chicago attorney with well-known underworld connections; McDonnell was the son-in-law of Sam Giancana, longtime boss of the Chicago Outfit. A prosecutor alerted the court to a possible conflict of interest: McDonnell had previously represented members of the

Infelise family, raising an obvious ethical concern given that Gacho stood accused of murdering Tullio Infelise. Gacho waived the conflict on the record, but he now contends that his waiver covered only the conflict created by McDonnell's *prior* association with the victim's family; he did not know that McDonnell continued to represent a member of the Infelise family *at the time of his trial*. This continuing conflict of interest and other tactical errors at trial form the basis of Gacho's Sixth Amendment claim that McDonnell's representation was ineffective.

Gacho's death sentence was set aside on direct appeal, *see Illinois v. Gacho*, 522 N.E.2d 1146 (Ill. 1988), and he returned to Judge Maloney's court for resentencing. The judge imposed a sentence of life. Gacho filed his first state postconviction motion in 1991, as the Operation Greylord indictments were being unsealed. He amended the motion in 1997 and supplemented it more than a decade later in 2008. He raised the same claims he now brings in his § 2254 petition: Maloney was corrupt, and McDonnell was conflicted and ineffective. Illinois moved to dismiss the supplemented state petition, and in 2009 that motion was granted. In 2012 the Illinois Appellate Court reversed in part and remanded the case to the trial court for an evidentiary hearing on Gacho's judicial corruption and conflict-of-interest claims. The hearing took place on August 6, 2013, and on October 6, 2013, the trial court denied Gacho's claims. That latest order is now before the Illinois Appellate Court; briefing was nearly complete when we heard oral argument in this case.

Meanwhile, back in 1997—six years after he filed his first state postconviction petition—Gacho initiated a parallel action in the Northern District of Illinois seeking habeas

relief under § 2254. This was followed by a second § 2254 petition in December 1999. In both petitions Gacho sought relief from an "unjustifiable" delay in the state-court proceedings. The district court consolidated the petitions and in November 2001 dismissed them without prejudice, concluding that the delays were the fault of defense counsel and thus Gacho was not eligible for relief from his requirement to exhaust state-court remedies. *Gacho v. Harrington*, No. 13 C 4334, 2013 WL 5993458, at *1 (N.D. Ill. Nov. 7, 2013).

In May 2013 Gacho filed another § 2254 petition—his third. He again asked to be excused from the exhaustion requirement because of inordinate delay in the state courts. The district court again denied his request. The judge noted that "[p]roceedings in the state court … are currently moving at a reasonable rate and there is no inordinate delay that must be remedied by initiating a merits-based review of petitioner's postconviction claims in federal court." *Id.* at *2. Since Gacho's state-court remedies were now moving along, the judge dismissed the petition for lack of exhaustion. The dismissal was "without prejudice to petitioner refiling at the conclusion of the state postconviction proceedings." *Id.* at *4.

Gacho appealed.[1]

---

[1] We recruited pro bono counsel for Gacho and now thank Robert Palmer and the Notre Dame Law School for their able efforts on their client's behalf.

## II. Discussion

Section 2254 generally requires state prisoners to exhaust available state-court remedies before seeking habeas review in federal court:

> (b)(1) An applicant for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) *the applicant has exhausted the remedies available in the courts of the State; or*
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) *circumstances exist that render such process ineffective to protect the rights of the applicant*.

28 U.S.C. § 2254(b)(1) (emphases added).

Gacho asks us to intervene in his quest for state collateral relief by excusing the exhaustion requirement and addressing the merits of his due-process and Sixth Amendment claims. He argues that the 25 years he has spent languishing in state postconviction proceedings is an inordinate delay, making the state process "ineffective to protect his rights" within the meaning of subsection (b)(1)(B)(ii) of § 2254.

Gacho's appeal runs into a jurisdictional impediment: The district court dismissed the § 2254 petition without prejudice to refiling once the state postconviction proceedings have run their course. That makes it a nonfinal order. With limited exceptions not relevant here, our jurisdiction extends only to appeals from final decisions of the district court. 28 U.S.C. § 1291; *see also Mostly Memories, Inc. v. For*

*Your Ease Only, Inc.*, 526 F.3d 1093, 1097 (7th Cir. 2008) ("A dismissal without prejudice is normally nonfinal because the plaintiff remains free to refile his case.").

This is not the first time we have addressed this kind of jurisdictional defect in the context of an unexhausted § 2254 petition. In *Moore v. Mote*, the district court dismissed a state prisoner's § 2254 petition for failure to exhaust state remedies because his claims remained "pending before a state post-conviction court." 368 F.3d 754, 755 (7th Cir. 2004). But the court had expressly left the door open to reviving the federal case when the state proceedings concluded. The judge dismissed the petition without prejudice and "with leave to refile … once Moore exhausts his state court remedies." *Id*. We held that the court's order was nonfinal and thus not appealable under § 1291 "because it explicitly contemplates the court's continuing involvement in the case." *Id.* Accordingly, we dismissed the appeal for lack of appellate jurisdiction. *Id.* at 756.

The situation here is identical. Gacho's state postconviction claims remain pending before the Illinois Appellate Court. The district court dismissed his § 2254 petition for failure to exhaust, but the dismissal was without prejudice and the judge's order specifically invited Gacho to refile his petition when the state process concludes. It's hard to see how Gacho can avoid the same jurisdictional fate as Moore.[2]

---

[2] A look at other circuits shows that our decision in *Moore* is not an outlier. The Ninth Circuit, for example, recently held that it lacked appellate jurisdiction in similar circumstances involving protracted state postconviction litigation. *See Stanley v. Chappell*, 764 F.3d 990 (9th Cir. 2014) (dismissing an appeal from a district court's nonfinal stay-and-abeyance order). The Fourth and Fifth Circuits also have also treated the

There *are* a few limited circumstances under which a habeas petitioner can get around the seemingly nonfinal nature of a dismissal without prejudice, but they're not implicated here. The common theme in these cases is that an ostensibly nonfinal order is functionally final. If, for example, a petitioner "will not be able to amend her complaint" after dismissal without prejudice and thus cannot refile it, then the dismissal is "final" for the purposes of appellate review. *See Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001). Similarly, if a new, subsequent federal petition would be time-barred, then the dismissal without prejudice would be effectively final. *See Dolis v. Chambers*, 454 F.3d 721, 723 (7th Cir. 2006). Here, however, there is no procedural impediment stopping Gacho from resubmitting his federal petition once he has exhausted his state-court remedies.

Gacho argues that *Moore* is distinguishable because it did not involve a claim of excessive delay. As he sees it, "the issue of excessive delay is separate from, and independent of, the issue of exhaustion of state remedies," and because this is a case about excessive delay, a "pure" exhaustion case like *Moore* isn't controlling. This argument confuses the merits with the antecedent question of appellate jurisdiction.

---

dismissal of a § 2254 petition without prejudice as not vesting appellate jurisdiction. *See Curtis v. Quarterman*, 340 F. App'x 217, 218 (5th Cir. 2009) (per curiam) ("A dismissal without prejudice generally does not operate as an adjudication on the merits … ."); *Brown v. Dir., Va. Dep't of Corr.*, 6 F. App'x 122, 122 (4th Cir. 2001) (per curiam) ("Brown appeals the district court's order dismissing his petition … without prejudice … . Because Brown may reinstate his suit by merely providing information requested by the district court, we lack jurisdiction to decide this appeal.").

Our decision in *Moore* did not address the correctness of the district court's exhaustion determination; instead, we dismissed for want of appellate jurisdiction because the district court's decision lacked the finality necessary for an appealable order under § 1291. *See* 368 F.3d at 756. This case is in exactly the same procedural posture. Gacho's argument about excessive delay *is* an argument about exhaustion—or more particularly, it's a plea to *excuse* his failure to exhaust under the exception in § 2254(b)(1)(B)(ii). Here, just as in *Moore*, the district court dismissed Gacho's § 2254 petition without prejudice to refiling once the state-court proceedings are complete, "explicitly contemplate[ing] the court's continuing involvement in the case." *Id.* at 755. That leaves us without jurisdiction.

Gacho also relies on a recent unpublished order in which we addressed and decided a similar excessive-delay claim, observing in a footnote that there is "no general rule that dismissals without prejudice are nonfinal orders and therefore nonappealable under 28 U.S.C. § 1291." *Monegain v. Carlton*, 576 F. App'x 598, 601 n.4 (7th Cir. 2014) (quoting *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 506 (7th Cir. 2009)). *Monegain* affirmed the district court's dismissal order on the merits rather than dismissing the appeal for lack of jurisdiction.

But *Monegain* did not even mention—let alone disturb—*Moore*. And insofar as the *Monegain* footnote relied on *Schering-Plough*, we think it read too much into that opinion. It's true that in *Schering-Plough* we disclaimed any "general rule that dismissals without prejudice are nonfinal orders and therefore nonappealable under 28 U.S.C. § 1291," *id.*, but the context of that observation is critical. We said there is no

such "general rule" because sometimes dismissals without prejudice are functionally final orders and therefore appealable. *Id.* We noted, for example, that if all dismissals without prejudice were nonappealable, then "dismissals for want of jurisdiction would not be appealable, and of course they are." *Id*. On the other hand, we explained that dismissals without prejudice *are* nonfinal and not appealable when the district judge "has not finished with the case, and appeal would therefore be premature." *Id*. What matters, in other words, is the functional finality of the order (as in *Larkin* and *Dolis*), and "if the defect that required dismissal is immediately curable," then the dismissal isn't really final. *Id.* at 507.

In short, *Schering-Plough* does nothing to unsettle *Moore*. Perhaps the "defect" that required dismissal in *Moore*—lack of exhaustion—was not "immediately curable" as would be, say, a formal or technical error in a complaint. But whether the defect that led to dismissal can be easily or immediately cured is merely an indicator of the true touchstone of appellate jurisdiction: finality. *Schering-Plough*'s reference to curability doesn't disturb *Moore* because the defect in Moore's petition was in the process of being remedied as his case moved through the state-court system. Because *Moore* remains good law and is controlling here, we lack appellate jurisdiction.

We close by noting that the glacial pace of the state-court proceedings is troubling, though the reasons for the long delay are not entirely clear. At least since 2008, the case has crawled along slowly but steadily and appears to be close to final resolution. If the state courts do not grant relief, the district court left the door open to refiling the § 2254 petition. Because the court's order is nonfinal, however, Gacho's

appeal must be and hereby is DISMISSED for want of appellate jurisdiction.