In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3140

MARVIN L. CARTER,

*Petitioner-Appellant*,

*v.*

CHRIS S. BUESGEN,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:19-cv-00949 — **James D. Peterson**, *Chief Judge*.

ARGUED MAY 18, 2021 — DECIDED AUGUST 18, 2021

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit
Judges*.

SCUDDER, *Circuit Judge*. Wisconsin inmate Marvin Carter
has waited four years and counting to challenge his 2017 sen-
tence on direct appeal in state court. Over these four years
Carter has weathered a ten-month transcript delay, three dif-
ferent public defenders, and fourteen extension requests by
counsel and the trial court itself. At no point during these four
years has a single court in Wisconsin ruled on the merits of

Carter's colorable challenge to his sentence. None of this is
Carter's fault.

Carter responded to the delay by seeking relief in federal
court under 28 U.S.C. § 2254. Although recognizing the inor-
dinate delay Carter has endured in Wisconsin, the district
court concluded that Carter had failed to exhaust his state
court remedies and dismissed his petition without prejudice.
At the very least, the district court added, Carter needed to
lodge one final plea for relief with the state court before re-
turning to federal court.

Carter appeals from that dismissal. We confront two is-
sues: whether we have appellate jurisdiction to review the
district court's dismissal order and, if so, whether the delay
experienced by Carter excuses him from the otherwise appli-
cable statutory exhaustion requirement. We answer both
questions in the affirmative, for what Carter has experi-
enced—and, by every indication, will continue to experi-
ence—in the Wisconsin trial and appellate courts is extreme
and tragic. The intractable delay shows that Wisconsin's ap-
pellate process, at least as far as Carter is concerned, is inef-
fective to protect rights secured by the United States Consti-
tution. So we reverse and remand to allow the district court to
rule on the merits of Carter's § 2254 petition without delay.

# I

## A

Everything began in 2016 when Wisconsin charged
Marvin Carter with possessing heroin, cocaine, and other nar-
cotics with intent to deliver and, separately, with possessing
a firearm as a convicted felon. Carter proceeded to trial in Mil-
waukee in 2017, but agreed midtrial to strike a deal with the

state. In exchange for dismissal of the cocaine and narcotic drugs charges, Carter pleaded guilty to the heroin and firearm charges. As part of the deal, the state agreed to recommend a six-year sentence.

But the prosecutor backtracked at sentencing, telling the trial court that "in hindsight, I so wish we would have allowed this to proceed through to the end of the trial and let the jury make their verdict because then I would have had four counts on the table today." The prosecutor's expression of regret seemed to strike a chord, as the court sentenced Carter to nine years' imprisonment—three more than the parties agreed to recommend in the plea agreement. The court entered judgment in July 2017.

Carter then sought to appeal his sentence, contending not only that the prosecutor breached the plea agreement at sentencing, but also that the trial court imposed the nine-year sentence based on inaccurate information—both in violation of his rights under the Fourteenth Amendment's Due Process Clause. Carter's first claim is akin to the one recognized in *Santobello v. New York*, 404 U.S. 257 (1971), where the Supreme Court held that a criminal defendant is entitled to relief—in the form of resentencing or an opportunity to withdraw his guilty plea—if the state commits a material breach of a plea agreement in connection with the original sentencing. See *id.* at 262–63.

As we have recognized in prior cases, the criminal appeal process in Wisconsin is unusual. See *Huusko v. Jenkins*, 556 F.3d 633, 634–35 (7th Cir. 2009). The first avenue of relief available to a convicted prisoner is the so-called "postconviction motion" filed under Wisconsin Statute § 974.02. See, *e.g.*, *Page v. Frank*, 343 F.3d 901, 905–06 (7th Cir. 2003) (describing in

detail the Wisconsin statutory scheme); *State ex rel. Rothering v. McCaughtry*, 556 N.W.2d 136, 137–38 (Wis. Ct. App. 1996). The defendant must alert the trial court that a postconviction motion is coming by filing, within twenty days of sentencing, a notice of intent to pursue postconviction relief. See Wis. Stat. § 809.30(2)(b).

In practice, this notice should trigger a series of obligations on the part of the clerk's office—and, if the defendant requests counsel, the public defender's office—to prepare for the postconviction motion. Operating as intended, the process should go like this: the clerk shares basic information about the case with the public defender's office, and that office, in turn, assigns a lawyer to request the record and to draft the postconviction motion. See Wis. Stat. § 809.30(2). Each step comes with a short and explicit statutory deadline, and the § 974.02 postconviction motion should be filed about five months after the filing of the notice of intent. The motion, like the original notice of intent, must be filed in the trial court. This requirement affords the trial court (and, indeed, the original trial judge) an opportunity to consider any appellate challenge in the first instance. An argument not raised in a § 974.02 postconviction motion is waived on appeal, save for two exceptions not relevant here. See Wis. Stat. § 974.02(2); *State v. Hayes*, 481 N.W.2d 699, 700 (Wis. Ct. App. 1992).

The Wisconsin Court of Appeals plays an important role in the postconviction motion process too, as any request for an extension beyond these statutory deadlines must be filed with and granted by that court. See Wis. Stat. § 809.82(2)(a). This is so even though the trial court rules on the postconviction motion in the first instance.

Our point with all of this is to say that Wisconsin's post-conviction review process under § 974.02 is itself complex and likely unfamiliar and counterintuitive to many readers. See *Huusko*, 556 F.3d at 634–35 ("Wisconsin combines some aspects of direct and collateral review."). For our purposes, though, what matters is that the § 974.02 postconviction motion operates as a prerequisite to accessing the state's *direct* appeal process. See *Morales v. Boatwright*, 580 F.3d 653, 656 (7th Cir. 2009); see also *Page*, 343 F.3d at 906 ("If an issue is raised in the § 974.02 motion but relief is denied by the trial court, the defendant then may appeal to the Court of Appeals of Wisconsin."). Down the road, after "the time for appeal or postconviction remedy provided in § 974.02 has expired," the defendant may collaterally attack his sentence. Wis. Stat. § 974.06(1). Of course, if the state process does not result in relief, the defendant may then seek collateral review in federal court under 28 U.S.C. § 2254.

Marvin Carter filed a notice of intent to pursue postconviction relief with the trial court on July 25, 2017—five days after sentencing. In line with the Wisconsin statute, the public defender's office promptly assigned him counsel. So far, so good.

But stagnation soon followed. The clerk and court reporter took ten months to locate and share the trial transcripts that Carter's counsel requested—a step that should have been completed within 60 days. See Wis. Stat. § 809.30(2)(g).

Things only got worse from there. On the day of the deadline to file the § 974.02 postconviction motion, Carter's counsel sought more time. He explained that his heavy caseload prevented him from meeting with Carter or reviewing the case materials. So too did Carter's counsel file a separate

motion asking the court to retroactively extend the time to request certain transcripts, as some slipped through the cracks during the initial request process. The Wisconsin Court of Appeals granted both motions in September 2018. By then, over one year had passed since Carter's July 2017 conviction and sentence.

With the benefit of hindsight, we now know that the delay for Carter was just beginning. Carter's counsel followed his first request to extend the deadline to file the postconviction motion with a second. And a third. And a fourth. This pattern continued for months, with Carter's counsel filing a new extension request on each day the prior request was due to expire. By late 2019—more than two years after Carter's July 2017 conviction and sentence—counsel had filed seven requests to extend the motion deadline. The Wisconsin Court of Appeals granted each motion in rote fashion.

B

Trapped by his counsel's recurring extension requests and what he saw as the complicity of the Wisconsin courts in the ongoing delay, Carter turned to federal court. In November 2019 he invoked 28 U.S.C. § 2254 and filed a pro se petition for postconviction relief in the Western District of Wisconsin, raising the same two sentencing challenges he had tried to present to the state trial court.

Section 2254 provides that relief "shall not be granted" unless the petitioner has exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). The statute qualifies that rule, however, with exceptions. The petitioner need not exhaust if there is "an absence of available State corrective process" or "circumstances exist that render such process

ineffective to protect the rights of the applicant." *Id.*
§ 2254(b)(1)(B)(i)–(ii).

Carter acknowledged that he did not exhaust state court
remedies. But he was quick to explain to the district court that
he had tried to do so but found himself stuck by the endless
extensions sought by his counsel and granted by the Wiscon-
sin Court of Appeals. Upon receiving Carter's petition, the
district court directed the parties to brief whether Carter
should be excused from further efforts to exhaust under the
exceptions Congress supplied in § 2254(b)(1)(B)(i)–(ii).

Nearly another year passed—with no forward progress
and indeed no movement of any kind in the Wisconsin
courts—before the district court issued its September 28, 2020
order dismissing Carter's petition for failure to exhaust. In no
uncertain terms, the district court found the delay entrenched
and extraordinary:

> The delay in Carter's postconviction or appel-
> late process is inordinate. It has been more than
> three years after his judgment of conviction, and
> his case has gone nowhere. From the docket of
> Carter's circuit court proceedings, it appears
> that some of that time is attributable to a delay
> in the production of transcripts. But even after
> that issue was resolved, Carter's appointed ap-
> pellate counsel has received ten extensions of
> time to file a notice of appeal or postconviction
> motion. The case has languished even since
> Carter filed this habeas petition.

*Carter v. Richardson*, No. 19-cv-949-jdp, 2020 WL 8613978, at *1
(W.D. Wis. Sept. 28, 2020) (citations omitted).

From there, however, the district court directed Carter to give the Wisconsin courts a final chance to act. The district court questioned whether "the state courts are aware that [Carter] disapproves of his counsel's repeated requests for extension of time." On that reasoning, the court dismissed Carter's petition "without prejudice," directing the clerk of court to send a copy of its order to Carter's state counsel as well as to the Wisconsin trial and appellate courts. But the district court recognized that reasonable jurists could debate the propriety of the dismissal and therefore granted a certificate of appealability.

From the day Carter filed his § 2254 petition to the day the district court entered its dismissal order, the Wisconsin Court of Appeals extended the deadline for counsel to file a § 974.02 postconviction motion five more times. By our tally, then, Carter's counsel filed twelve consecutive extension requests, collectively pushing the deadline to file the motion to November 24, 2020. And, as best we can tell, not once has the Wisconsin Court of Appeals—or any other Wisconsin court for that matter—recognized that Carter's case has been stalled for over four years.

C

There is little to report by way of progress in state court over the last nine months. As promised, the district court sent a copy of its September 28, 2020 order to the trial court, the Wisconsin Court of Appeals, and Carter's counsel. Perhaps stirred by the district court's order, counsel filed Carter's postconviction motion with the trial court on the November 24, 2020 deadline.

But the good news for Carter ends there. After filing the postconviction motion, Carter's public defender withdrew from the case—as did the next assigned lawyer. We have no reason to think that Carter shoulders any fault for these shuffles of counsel. He is now represented in the postconviction process by a third public defender as he continues to await a decision from the trial court on the motion he filed last year. And there is no way to know when Carter might expect that decision. Although the trial court must issue an order on a postconviction motion "within 60 days" of the conclusion of briefing, see Wis. Stat. § 809.30(2)(i), the trial court itself has requested, and the Wisconsin Court of Appeals has granted, two extensions of that deadline to date. And on top of that, the Wisconsin Court of Appeals on its own accord issued a third extension of time for the trial court. The latest deadline—October 11, 2021—will arrive more than four years after Carter's July 2017 conviction and sentence.

During oral argument and in briefing, Carter emphasized that time is of the essence: if the trial court had adopted the sentence that the state agreed to recommend in his plea agreement, he would be due for release in just six months, on February 10, 2022.

## II

We begin as we must with appellate jurisdiction. The state insists that the district court's dismissal order lacks the finality required by 28 U.S.C. § 1291. Finality is absent, the state urges, because the district court's dismissal was "without prejudice" and therefore, by its terms, contemplates that Carter may return to federal court if the state proceedings do not budge—leaving nothing for us to review today. We cannot agree.

We have jurisdiction over appeals from all final decisions of the district courts. See 28 U.S.C. § 1291. As a general and highly imperfect rule of thumb, a dismissal with prejudice is final and thus reviewable, and a dismissal without prejudice is not. See *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006). The thought behind this distinction is that a dismissal without prejudice affords the plaintiff an opportunity to fix the short-coming that led to the dismissal before returning to federal court for another try. See *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011).

But we have been careful to underscore that "the label 'without prejudice' does not always prevent a disposition from being a *de facto* final judgment." *Gleason v. Jansen*, 888 F.3d 847, 852 (7th Cir. 2018); see also *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003). Indeed, we often encounter "situations in which an order nominally dismissing a case without prejudice is in fact final because an amendment would be unavailing." *Montano v. City of Chicago*, 375 F.3d 593, 597 (7th Cir. 2004); see also *Maddox*, 655 F.3d at 716. When it would be futile for the plaintiff or petitioner to attempt to resolve the issue that caused the district court to dismiss the case, then, a seemingly nonfinal order is "functionally final" and thus appealable under § 1291. *Gacho v. Butler*, 792 F.3d 732, 736 (7th Cir. 2015).

We see finality in the futility of the district court's directing Carter—who has experienced nothing but delay and inaction for four years in the Wisconsin trial court—to try a final time to bring his appeal to life. Remember what the district court first found: that "[t]he delay in Carter's postconviction or appellate process is inordinate," as "[i]t has been more than three years after his judgment of conviction, and his case has

gone nowhere." *Carter*, 2020 WL 8613978, at *1. Carter's case, the district court likewise emphasized, "has languished even since [he] filed this habeas petition." *Id.*

These findings reflect nothing other than a conclusion that it would be futile for Carter to continue his attempts to exhaust in state court. Put another way, the district court recognized that Wisconsin's postconviction review process has failed Carter as a practical matter. There is no indication that Wisconsin will take up his postconviction motion at any time in the foreseeable future. What all of this means is that Carter has no more remedies to exhaust, so whatever lack-of-exhaustion defect the district court recognized is functionally impossible to repair. See *Strong v. David*, 297 F.3d 646, 648 (7th Cir. 2002). By directing Carter to return to state court for one last try, the district court invited Carter to attempt a feat guaranteed to fail. In these circumstances, the district court's order is functionally final, and we have appellate jurisdiction to review the district court's dismissal order under § 1291.

As a descriptive matter, the state is correct that the district court, in entering the dismissal without prejudice, contemplated that Carter "may refile his habeas petition" in the event that the Wisconsin case "doesn't budge." *Carter*, 2020 WL 8613978, at *2. But that observation (or perhaps prediction) alone does not resolve whether the district court's judgment is final within the meaning of § 1291. "Often it is possible that a dismissed case will resume in one form or another, especially if the dismissal is based on a jurisdictional or procedural defect" and "[y]et in countless cases a dismissal for failure to exhaust state judicial remedies … has been appealed as a final judgment." See *Hill*, 352 F.3d at 1145. Rather, we judge finality by considering the whole of the district court's order and

asking whether "the district court has finished with the case." *Id.* at 1144.

Though we recognize that state court remedies exist in theory in Wisconsin and should be available, the last four years have demonstrated that those remedies are, at least for Carter, inaccessible. The district court makes all of this plain in its order. Its subsequent instruction that Carter give the Wisconsin courts one more try is at odds with the substance of its reasoning and insufficient to deprive the judgment of finality.

We have held that futility reveals finality in related contexts too. The Prison Litigation Reform Act, for instance, mandates that an inmate exhaust administrative remedies before bringing suit to challenge prison conditions in federal court. See 42 U.S.C. § 1997e(a). Because the Act's exhaustion requirement is ironclad, see *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), district courts often dismiss prisoners' § 1983 claims without prejudice for failure to exhaust. Time and again, we have exercised appellate jurisdiction to review those dismissal orders on the ground that the prisoner missed the limitations period or is no longer incarcerated and is thus unable to exhaust administrative remedies. See, *e.g.*, *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016) (exercising jurisdiction because the respective deadlines for administrative remedies "have long since passed" so "it would be impossible at this point for [the plaintiff] to exhaust his administrative remedies and thereafter amend his complaint"); *Kaba*, 458 F.3d at 680 (exercising jurisdiction because the plaintiff "was released from prison, and therefore the dismissal without prejudice for failure to exhaust is effectively a final order because no amendment could

resolve the problem"); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (same).

Much the same reasoning applies here. After finding that Carter's case "has gone nowhere" and has "languished" year after year, the district court directed Carter to give the state process one final shot. No doubt the district court issued this instruction out of respect for principles of federalism and comity. But the undisputed record of delay in state court leaves us unpersuaded that any future attempts by Carter to exhaust will be anything other than a fool's errand—entirely futile. See *Maddox*, 655 F.3d at 716 (explaining where "there is nothing to indicate that a plaintiff or petitioner can fix" his exhaustion error, a "dismissal without prejudice does not preclude our appellate jurisdiction") (cleaned up).

Our prior decisions in *Moore v. Mote*, 368 F.3d 754 (7th Cir. 2004), and *Gacho v. Butler*, 792 F.3d 732 (7th Cir. 2015)—two cases in which we concluded we lacked appellate jurisdiction over § 2254 exhaustion dismissals—are not to the contrary. For its part, *Moore* reinforces the proposition that, in the ordinary course, exhaustion is required under § 2254(b)(1) and, absent special circumstances, an order dismissing a petition for a clear failure to exhaust will lack the finality requisite to authorize appellate review. See 368 F.3d at 755 (explaining that no "special circumstances" justified Moore's attempt to jump the line to federal court because he could "easily return to state court, conclude his pending action, and then submit the state court decision … to the district court"). But Carter's case is far from ordinary. He cannot "easily" return to state court, where his case remains in an indefinite holding pattern. We see no reason past will not be prologue in the Wisconsin courts for Carter.

Nor are we convinced that *Gacho* requires us to dismiss Carter's appeal for lack of appellate jurisdiction. Like Marvin Carter, Robert Gacho experienced massive delays in state court—though the reasons behind the many years Gacho spent in state proceedings were "not entirely clear." 792 F.3d at 737. Gacho, too, sought relief in federal court under § 2254 and hit a roadblock when the district court dismissed his petition without prejudice for failure to exhaust. But the district court expressly found that Gacho's "[p]roceedings in the state court … are currently moving at a reasonable rate and there is no inordinate delay that must be remedied." 792 F.3d at 735 (alterations in original). On appeal, we echoed the district court's finding that Gacho's case "has crawled along slowly but steadily and appears to be close to final resolution." *Id.* at 737. Seeing no futility in allowing the state court's proceedings to reach finality, we relied on *Moore* and dismissed the appeal for lack of appellate jurisdiction, emphasizing that Gacho could return to federal court if he did not receive relief in the Illinois courts.

The situation here is different. Carter's case is at a standstill before the Wisconsin trial court and shows no sign of going anywhere anytime soon. This reality is captured by the district court's express findings that Carter's case has gone nowhere and that the delay is inordinate. It is precisely these findings that distinguish the situation here from *Moore* and *Gacho* and that solidify our appellate jurisdiction.

### III

Assured of our jurisdiction, we proceed to the merits of the district court's decision to dismiss Carter's petition. The district court interpreted 28 U.S.C. § 2254(b) and concluded that Carter must attempt to exhaust state court remedies at

least one more time before seeking federal relief. Not so in our view.

Recall that § 2254(b)(1) requires, as a prerequisite to federal relief, that a petitioner "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). But Congress took care to ensure that the exhaustion requirement—for all of its practical virtue—would not leave state prisoners without a remedy. To that end, the exceptions found in § 2254(b)(1)(B) permit federal review where state court remedies are unavailable or ineffective. And of course, "[e]xceptions and exemptions are no less part of Congress's work than its rules and standards—and all are worthy of a court's respect." *BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1539 (2021).

Carter contends that state court remedies in Wisconsin are ineffective to protect his rights. We agree, for the facts in this case afford no other reasonable conclusion. As the district court correctly observed, the delay in Carter's case is extreme. More than four years have passed since Carter's conviction and sentence. The length of the delay should have sounded an alarm bell within the Wisconsin courts, the public defender's office, and even the Attorney General's office. See *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970) (seventeen-month delay is inordinate); *Lowe v. Duckworth*, 663 F.2d 42, 43 (7th Cir. 1981) (three-and-one-half-year delay is inordinate). Everyone doing nothing is no longer an option.

Carter has demonstrated what Congress required to excuse exhaustion of state court remedies—Wisconsin's post-conviction review process has, for all practical purposes, proved itself unavailable to him or, at the very least, "ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B)(i)–(ii).

Carter has yet to move beyond the trial court and toward his direct appeal. Not a single court has reviewed his sentencing challenge at any level of the state judiciary. No substantive motion has been granted or denied in these four years, and no administrative procedure seems to be in place to detect and end the severe stagnation. His colorable *Santobello* claim has fallen upon deaf ears, and we are left with the impression that for Carter, justice delayed has become justice denied.

Carter's case is stuck in park. In these circumstances, then, Carter is excused from exhausting and may bring the claims alleged in his state motion for postconviction relief directly to federal court. See *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997).

What makes all of this so tragic is that the state itself is responsible for the delays. The clerk's office failed to transmit the necessary record documents for ten months. Carter's (first) public defender filed, and the Wisconsin Court of Appeals granted, twelve extension requests. The trial court itself filed two extension requests, and the Wisconsin Court of Appeals added a third extension of time too. Each entry indicates the request is granted, followed by a new, extended date. The record does not show any court rules or internal operating procedures from which it can be determined who decides these requests—does a single judge hear the motion, or a motions panel of judges? Is it court administrators or lower-level court employees? Rather than dismiss this case as an outlier, Wisconsin's courts need to fix the systemic deficiency that has resulted in how Carter's case has been treated, and become more transparent about how discretion is exercised, for the benefit of the parties, their counsel, other courts, and the public.

It seems the only person without blame for the delay is Carter himself. For this reason, we were alarmed to see the state point its finger at Carter and, in its briefing, go so far as to say that he is at fault because he "complained to no one about the delays until after he came into federal court." It is not clear to us what else Marvin Carter could have done or, for that matter, why the state is so intent on avoiding responsibility for its own failings. And we were shocked anew by the state's presentation at oral argument. When asked whether the Attorney General had filed anything with the Wisconsin Supreme Court alerting it to the serious problems in the lower courts, counsel insisted, "We don't have a problem." That view is indefensible: a miscarriage of justice occurs when a convicted prisoner must wait four years for appellate review.

We VACATE the judgment and REMAND to the district court to commence review of Carter's § 2254 petition without delay.

EASTERBROOK, *Circuit Judge*, concurring. I join parts I and III of the court's opinion. I agree with the outcome of part II, but it does not go far enough. *Moore v. Mote*, 368 F.3d 754 (7th Cir. 2004), and *Gacho v. Butler*, 792 F.3d 732 (7th Cir. 2015), should be overruled rather than distinguished.

*Moore* and *Gacho* are among decisions that take the phrase "without prejudice" as a talisman meaning "no appellate jurisdiction." My colleagues observe that other decisions look in another direction. One example is litigation dismissed for failure to exhaust administrative remedies (slip op. 12–13). Often "without prejudice" means "there's more to do in this court"; that's so, for example, when a complaint is dismissed without prejudice but could be amended, so the suit itself remains pending. Then the decision is not final. But more often "without prejudice" means "you should be in some other tribunal." Then the decision in the district court is final and appealable, and all "without prejudice" means is that the law of preclusion (res judicata) will not block the next step in a different court.

Consider a dismissal for lack of venue, personal jurisdiction, or subject-matter jurisdiction. Such a dismissal always is without prejudice, because the federal court has not decided the merits. The litigants may be able to go to a state court, or an administrative tribunal, or an arbitrator, or even file a new federal suit after some condition has been satisfied. But the current suit is over, and we routinely hear appeals in which the loser argues that it is unnecessary to go elsewhere and that the current suit should continue. This is so obvious that appellate jurisdiction is mentioned only rarely. But when appellate jurisdiction is contested, this sort of decision is held to be final. See, e.g., *Green Tree Financial*

*Corp. v. Randolph*, 531 U.S. 79 (2000) (order dismissing suit without prejudice and directing the parties to arbitrate is final and appealable).

Appellate jurisdiction is supposed to be determined using simple, bright-line rules. See, e.g., *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 201–03 (1988); *Ray Haluch Gravel Co. v. Central Pension Fund*, 571 U.S. 177, 185–86 (2014). A decision is final when the district court has disposed of all pending issues, and the next step (if there is one) must occur elsewhere. See, e.g., *Catlin v. United States*, 324 U.S. 229, 233 (1945); *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) ("The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground such as failure to exhaust administrative remedies … . The test is whether the district court has finished with the case."). See also 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* §3914.6 (2d ed. 1992 & Supp. 2021). Other kinds of decisions may be final—if, say, they reject a claim of a "right not to be tried"—but a decision closing the case *always* is final.

Here is a simple rule: when "without prejudice" means "I have not resolved the merits but this case is over nonetheless," then the decision is final; when it means "the problem can be fixed so that litigation may continue in this court," then the decision is not final. In our case the phrase "without prejudice" means "go litigate some more in Wisconsin." The judge contemplated that an adverse decision by the state's judiciary might justify more federal litigation, but *this* case is over, so Carter can appeal.

*Moore* and *Gacho* should not be allowed to mess up jurisdictional analysis, sending bench and bar on hunts for novel ways to appeal from dismissals without prejudice. The lawyers in this case devoted tens if not hundreds of hours, and reams of paper, to analyzing the collateral-order doctrine and the treatment of stays in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), when the only important question is whether the judgment is final under traditional principles. Or consider my colleagues' statement (slip op. 11) that the district court's order is "functionally final" because further litigation in Wisconsin is "guaranteed to fail." That should not matter—nor should it be necessary to insult the state judiciary (by predicting that it will reject a meritorious request) in order to see that a federal judgment is appealable. What makes this judgment final is the fact that the district judge told Carter to litigate in a different court. Finality depends on what the district judge did, not on what that other court may do tomorrow.