In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2789

STEVEN LINDSEY,

*Petitioner-Appellant,*

*v.*

RON NEAL,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:23-cv-740-TLS-APR — **Theresa L. Springmann**, *Judge.*

ARGUED APRIL 08, 2025 — DECIDED MAY 30, 2025

Before HAMILTON, LEE, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* In 2019, Steven Lindsey sought postconviction relief in an Indiana trial court, challenging his murder conviction. For the past six years, that petition has languished in the state court. The delay stems from the state court's inaction and the prosecution's ineffectiveness. In 2022, Lindsey turned to federal court for relief under 28 U.S.C. § 2254. His federal habeas petition acknowledged that he had not fully exhausted Indiana's state remedies;

however, he argued that those remedies were "ineffective," allowing him to proceed under the exception to the exhaustion requirement in § 2254(b)(1). We agree. We therefore vacate the district court's judgment dismissing Lindsey's petition and remand for further proceedings.

## I

In 2016, an Indiana jury convicted Lindsey of murdering his wife, Melinda Lindsey. The conviction came after two failed attempts. The first trial, in September 2015, ended in a mistrial when evidence emerged implicating an alternative suspect, prompting a pause to investigate the lead. Six weeks later, the State tried again. That second trial also resulted in a mistrial, this time because the jury could not reach a unanimous verdict. Finally, in February 2016, the State brought Lindsey to trial a third time. That proceeding concluded in a guilty verdict. The trial court sentenced Lindsey to fifty-five years in prison.

Lindsey appealed, raising numerous constitutional, procedural, and evidentiary challenges. The Court of Appeals of Indiana denied his appeal in an unpublished memorandum decision. *Lindsey v. State*, 94 N.E.3d 364 (Table), 2017 WL 4800127 (Ind. Ct. App. 2017). The Indiana Supreme Court declined to take his subsequent appeal.

That brings us to Lindsey's state postconviction proceedings, the matter before us. He filed a pro se postconviction petition in state court on February 13, 2019. That was over six years ago. The case has virtually stalled during that time, with the state court taking little action. Below we describe the litigation of the last six years.

On April 30, 2019, the State, without seeking any extension from the state court, filed its answer to Lindsey's petition—more than a month late. *See* IND. POST-CONVICTION R. 1(4)(a). Two weeks after its late filing, the State asked the court to appoint a special prosecutor. The court complied, but the first appointee stepped aside after one month, forcing the court to appoint a new prosecutor in August.

Lindsey, meanwhile, tried to move his case forward. In August 2019, he filed several motions, including one to set a hearing. After three months of silence, he filed another motion in November requesting a status update. The court has yet to acknowledge or rule on any of these motions.

The case then sat idle for over a year. In December 2020, nearly two years after Lindsey filed his petition, the state court, acting on its own, appointed Lindsey a public defender. At first glance, the move might have seemed like progress. But Lindsey indicated in his petition that he wished to represent himself. That misunderstanding cost another three months, as the public defender moved to withdraw and the court eventually granted the request. Even then, Lindsey's earlier motions remained unaddressed.

After the case stalled again for another year, Lindsey moved to amend his petition in December 2021. One month later, he filed a motion for discovery. In response, the special prosecutor withdrew from the case. The court appointed a third special prosecutor in May 2022.

To the State's credit, the third special prosecutor got off to a better start. That prosecutor promptly requested (and received) an extension to respond to Lindsey's amended petition and discovery motion. By July 2022, the State filed an

answer and responded to Lindsey's motion for discovery; by August, the State served discovery requests. Lindsey timely responded the next month, answering interrogatories and objecting to certain requests, which the State never moved to compel. Then the state case went silent again. So, in August 2023, Lindsey turned to federal court and filed a pro se habeas petition in the Northern District of Indiana.

Like his state appeals, Lindsey's habeas petition raises a range of constitutional claims: some alleging ineffective assistance of counsel by trial and appellate counsel, others charging prosecutorial misconduct, and still others asserting due process violations. All underpin his central claim that he is actually innocent.

Lindsey concedes that he has not exhausted state court remedies for all the claims he brings in his habeas petition, as 28 U.S.C. § 2254(b)(1)(A) ordinarily requires. He argues, however, that the State blocked his path. He therefore invokes § 2254(b)(1)(B)(ii), which excuses exhaustion when "circumstances exist that render such process ineffective to protect the rights of the applicant." Specifically, he maintains that inordinate delay in his state postconviction proceedings should excuse the exhaustion requirement relating to those claims.

The district court disagreed. It dismissed Lindsey's petition at the screening stage, *see* Rule 4 of the Rules Governing Section 2254 Cases, finding that any delays in the state court were reasonable and declining to reach the merits. In so ruling, the district court mistakenly stated that Lindsey was appointed counsel within a year of filing his state postconviction petition (the docket shows the appointment in fact occurred nearly two years after Lindsey's initial filing) and concluded that the appointment of counsel rendered Lindsey's earlier

motions moot. The district court acknowledged the lack of progress since September 2022 but found that Lindsey's legal inexperience, not the State, caused the delay.

The district court denied Lindsey a certificate of appealability, but he proceeded with an appeal. On review, this Court granted him a certificate and allowed his appeal to proceed, finding that reasonable jurists could debate whether Lindsey's petition fell within the inordinate-delay exception. Lindsey then requested appellate counsel, and we appointed him a lawyer. We now squarely address whether Lindsey is excused from § 2254's exhaustion requirement.

## II

In appeals of petitions for habeas relief, we review the district court's legal conclusions de novo and its factual findings for clear error. *Arnold v. Richardson*, 14 F.4th 780, 784 (7th Cir. 2021).

Federal habeas relief is unavailable unless the petitioner first gives state courts a full opportunity to resolve his constitutional claims. *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (citing § 2254(b)(1)(A)). To meet this requirement, the petitioner must pursue "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This "rule of comity" eases federal-state "friction" by giving state courts the first chance to correct any constitutional violations before a federal district court intervenes. *Id.*

That rule has exceptions, though. "The petitioner need not exhaust if there is 'an absence of available State corrective process' or 'circumstances exist that render such process ineffective to protect the rights of the applicant.'" *Carter v. Buesgen*, 10 F.4th 715, 719 (7th Cir. 2021) (quoting §§ 2254(b)(1)(B)(i)–

(ii)). Our longstanding precedent establishes that inordinate delay can render a state-law remedy ineffective or unavailable. *Evans v. Wills*, 66 F.4th 681, 682 (7th Cir. 2023) (citing *Carter*, 10 F.4th at 723–24, and *Lane v. Richards*, 957 F.2d 363, 364–65 (7th Cir. 1992)). To invoke this exception to the exhaustion rule, a petitioner must demonstrate both that the delay is "inordinate" and that it is "attributable to the state." *Id.*

Lindsey easily establishes the first step of inordinate delay. More than six years have passed since he filed his state postconviction petition without a meaningful step forward. Our Court has found far shorter delays intolerable: a four-year delay was "extreme and tragic" in *Carter*, 10 F.4th at 716; a three-and-a-half-year delay was "inordinate" in *Lowe v. Duckworth*, 663 F.2d 42, 43 (7th Cir. 1981); and even a seventeen-month lapse sufficed in *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970) (per curiam), where the petitioner's court-appointed counsel failed to file an opening brief in that time. The state court has yet to rule on Lindsey's 2019 motions. Indeed, there was a nearly three-year period from June 2022 to May 2025 during which the state court took no action—a delay that, standing alone, is troubling. *See Evans*, 66 F.4th at 685 (concluding that a three-year delay within longer delay was itself inordinate). The question, then, boils down to whether the delay is "meaningfully attributable to the state." *Id.*

To answer that, we evaluate the actions of the state court and prosecution and determine whether they are responsible for "significant portions of the total delay." *Id.* at 686. The law does not demand perfection from the State, just steady movement that shows its judicial processes are effectively "protect[ing] the rights of the applicant." § 2254(b)(1)(B)(ii).

Unfortunately, the Indiana trial court and the attorneys for the State have failed to live up to this basic standard here.

Start with the state court. Since the case's inception, the court has not held any hearings, has not issued any status updates, and has not acknowledged or ruled on any of Lindsey's motions. That pattern of inaction is unacceptable. So too is the court's selective attention to the parties' filings. The state court has ruled on each of the prosecution's motions within two weeks yet has ignored every motion Lindsey filed pro se. We recognize the administrative burdens that can come with pro se litigation. Courts, however, are not two-tiered. A motion drafted in a prison cell deserves no less judicial attention than one typed in a government office. *See Huber v. Anderson*, 909 F.3d 201, 210 (7th Cir. 2018) (Prisoners have "an independent constitutional right to meaningful access to the courts.").

The prosecution's performance fares no better. It missed the deadline to answer Lindsey's petition by more than a month without seeking the court's permission or forgiveness for the late filing. After filing its late response, it asked the court to appoint a special prosecutor, triggering a series of appointments and withdrawals that delayed meaningful review of the case for months. Even the third special prosecutor, who started off diligently, eventually lapsed into a years-long silence. Each of these false starts lies with the State, not with any delay or obstruction by Lindsey.

Now contrast that with Lindsey's performance. From the outset, he took active steps to advance his case: filing multiple motions, requesting a hearing, and later seeking to amend his petition and conduct discovery. When the court fell silent for months, Lindsey followed up with a motion for a status

update. His diligence continued during discovery. After the State submitted its requests, Lindsey timely responded, answering interrogatories and objecting where he deemed appropriate. He met each obligation without delay, all while navigating the process pro se from prison. In short, while the State stumbled or stood still, Lindsey took action.

Notwithstanding this record, the State tries to shift the blame to Lindsey. Its core claim is that Lindsey bore a duty to prosecute his case, *see Caruthers v. State*, 58 N.E.3d 207, 210 (Ind. Ct. App. 2016), and failed to meet it. But the record shows that he met any burden. Lindsey filed repeated motions, and the court ignored each one. He has also actively and timely participated in discovery, including answering and objecting to certain production requests. Absent informal resolution of any discovery disputes between the parties, the State could have moved to compel responses. *See* IND. TRIAL R. 26. Yet the State abandoned the effort entirely and now insists Lindsey should have done more. What more, it does not say. The law does not require Lindsey to take on the futile task of filing motion after motion into a judicial void.

The State also argues that the state court's failure to rule on Lindsey's pending motions should not count against it, since those motions predated his appointment of counsel. That position is unreasonable. True, Indiana courts recognize that represented litigants speak "to the court through counsel." *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). But Lindsey's postconviction petition expressly declined the appointment of counsel, rendering the court's appointment an oversight. Moreover, the assigned public defender never participated in the case. And the state court neither struck nor ruled on Lindsey's motions. A court does not tacitly nullify a

pro se litigant's motions by appointing unwanted counsel. The State's attempt to shift blame to Lindsey ignores that the confusion originated from the court's own error.

Even if Lindsey bore some responsibility for discrete periods of delay—and we are not saying he did—the broader timeline overwhelmingly points to the State. We underscored this point in *Evans*, where we explained that the § 2254(b)(1)(B) analysis eschews "divvy[ing] up the proceedings into bits and pieces, and then measur[ing] who—[the petitioner] or the state—is responsible for a greater amount [of the delay]." *Evans*, 66 F.4th at 686. Instead, it turns on whether the State's process proved ineffective. The pattern of delay and inaction Lindsey experienced meets that standard. Six years at a standstill "should have sounded an alarm bell" in Indiana's judicial apparatus. *Carter*, 10 F.4th at 723. Yet rather than accept responsibility, the State appears more interested in shifting blame.

Recent actions by the State prove the point. In a Rule 28(j) letter filed on May 19, the State informed the Court that it has moved to dismiss Lindsey's postconviction petition in state court for failure to prosecute. That motion—filed one month after our Court held oral argument and while the federal appeal was pending—accused Lindsey of "abandon[ing]" the state court proceedings in favor of the federal habeas relief. A hearing on the motion is now set for June 17, which would be the first hearing the state court has held since the postconviction petition was filed in 2019. In line with its prior conduct, the State remains intent on dodging review rather than confronting the merits of Lindsey's petition. Its refusal to take any responsibility for delaying the case serves as yet another

illustration of the State's unwillingness to give Lindsey a fair shake.

Unable to pin the delay on Lindsey, the State also attempts to shift blame to other causes. It suggests, for example, that the complexity and length of the case explains the delay. This might be a complex case, but that does not excuse failing to hold a single hearing in six years. The State also invokes the COVID-19 pandemic. Here too, it offers no concrete explanation for how the pandemic affected this case, aside from general references to delays in 2020. Lindsey filed his petition nine months before the pandemic began, and it has now been several years since the courts returned to normal operations. Simply put, the pandemic cannot explain six years of stasis.

### III

In sum, we find that Indiana's postconviction remedies proved to be ineffective for Lindsey and thus that he is excused from § 2254's exhaustion requirement. Accordingly, we VACATE the judgment and REMAND to the district court to review the merits of Lindsey's § 2254 petition.